SOPHIA LUETTJOHANN, Appellee, v. JOACHIM LUETT-JOHANN, Appellant.

**Divorce:** CRUEL AND INHUMAN TREATMENT: EVIDENCE. In this action by the wife for a divorce on the ground of cruel and inhuman treatment the evidence is held to justify a decree although actual physical violence was not shown.

*Appeal from Cedar District Court.*—HON. W. N. TREICH-LER, Judge.

TUESDAY, MAY 3, 1910.

SUIT in equity for a divorce based upon the ground of cruel and inhuman treatment. The defendant denied the charge and pleaded a cross-petition, which he afterwards dismissed. The trial court granted the prayer of plaintiff's petition and awarded her alimony and the custody of certain children. From the decree granting the divorce, defendant appeals.—*Affirmed.*

*C. O. Boling* and *Chas. W. Kepler & Son,* for appellant.

*W. G. W. Geiger* and *D. D. McGillivray,* for appellee.

DEEMER, C. J.—Plaintiff was thirty-nine and defendant something over forty years of age at the time of trial. Plaintiff was a widow with four children when she married the defendant, and defendant, although unmarried, had an illegitimate child in Germany to whose support he contributed. At the time of the marriage plaintiff owned one hundred and sixty acres of land, live stock, agricultural implements, and $300 in cash; and defendant is said to have had $500 in cash. As a result of this latter marriage three children were born. Plaintiff's children by her former marriage became members of the new family, and all worked upon the one hundred and sixty-acre farm for several years; the revenues thereupon being used for the support of the family, the payment of debts, and the purchase of some South Dakota land, title to which was taken in defendant's name. Almost from the beginning defendant seemed unable to get along with his stepchildren. In so far as disclosed by the record, they were as dutiful and respectful as such children ordinarily are, and they did their full part of the work about the farm. As time went on, the relations between these children and the defendant grew worse, and he frequently struck, kicked, abused, and otherwise maltreated them—

generally without cause. He also used foul and obscene language toward them, often in the presence of their mother. Something like a year or eighteen months before the trial, defendant began to abuse his wife. It seems that, for some reason, he lost all love for her shortly after their marriage; but he did not become abusive until about the time stated. He compelled plaintiff to work in the fields when her physical condition would not warrant it. He used violent, profane, vulgar, and obscene language toward his wife and children, threatened to and did leave home for days at a time without cause, threatened, in the presence of his wife, many times to commit suicide, abused his own children in plaintiff's presence, struck his own brothers when they came to shield plaintiff from abuse and maltreatment, locked the doors of a room in which plaintiff was confined upon a sick bed, and struck the children who tried to enter to see their mother. He threatened to strike plaintiff with his fists and with a hammer, refused to purchase clothing for his children, and refused to send them to school, except for brief periods. He compelled his wife to change her church relations because he said the church to which she belonged was too religious. He had many fits of anger, during which he would rend his clothing and fall upon the floor in the presence of his wife. He could not get along with his neighbors and frequently slandered and abused them. He taught his children to use vile language and cursed and swore at them frequently in plaintiff's presence. Defendant went to a hospital in Davenport for treatment of a real or supposed ailment and called his wife there ostensibly to attend him. When she arrived he tried to induce her to sign a note for $2,000. Upon her refusal to do so, he called her a liar and abused and scolded her. One effect of this, it seems, was to cure him of his ailment, for he almost immediately left the hospital and returned to the farm, where he continued to harass the plaintiff and her children. While he

had some income from his Dakota lands, he never used any part of it for the support of his family. He contends that his course of conduct was due to the attempt of plaintiff and her children by a former marriage to deprive him of the management of plaintiff's lands and to drive him therefrom; but the testimony does not justify any such conclusion. Her children by a former marriage often worked for others, and plaintiff was endeavoring to make the place agreeable to defendant. Indeed, for the eighteen months prior to the trial, defendant was a wanderer, and if it had not been for plaintiff's children the farm would not have had any sort of management. Defendant has an ungovernable temper, as shown by his relations with his neighbors and in his handling of his own stock. He did not show any affection for his children or his family and had no respect for their feelings. Defendant would grow very angry over small affairs and, instead of trying to govern his temper, let his feelings run riot to the great disturbance and despair of all about him. Plaintiff, it seems, did not return or resist his abuse, but had resort to woman's chief reliance in such cases—tears. His conduct caused plaintiff several attacks of sickness; the last one being during the trial of the case in the lower court.

From such a showing, which by no means reproduces all of the record, it is apparent that the trial court was justified in awarding plaintiff a divorce. If authority be needed, see *Luick v. Luick,* 132 Iowa, 302; *Hullinger v. Hullinger,* 133 Iowa, 270; *Shook v. Shook,* 114 Iowa, 592; *Berry v. Berry,* 115 Iowa, 543; *Rader v. Rader,* 136 Iowa, 223. None of these cases is stronger in its facts than the one presented by the record now before us, and in each a divorce was granted. It is not necessary that blows be struck, or that there be physical violence to entitle a wife to a divorce. Other things are quite as harmful and dangerous to health and life as bodily assaults. The trial court had the witnesses before him and evidently disbe-

lieved many of defendant's statements. The printed record now before us shows that he had a convenient "don't remember" for many of the occurrences charged against him. It is naively suggested that defendant is insane, and therefore no divorce should be granted. His insanity is not of that form which excuses; instead of insanity, it seems that defendant had an ungoverned, and perhaps, from long use, an ungovernable, temper, which makes him a most unfit companion for a woman with any sort of feeling.

The decree is manifestly correct, and it is *affirmed.*