MARTHA FELKNER v. ORA FELKNER, Appellant.

**Divorce:** CRUEL AND INHUMAN TREATMENT: EVIDENCE. In this action for divorce, based on cruel and inhuman treatment, the evidence is reviewed and held sufficient to support a decree.

*Appeal from Appanoose District Court.*—HON. C. W. VERMILION, Judge.

FRIDAY, NOVEMBER 17, 1911.

ACTION for divorce. From a decree granting the relief prayed, and awarding plaintiff the permanent custody and control of the infant child and alimony for the care, support, and education of such child, the defendant appeals. *Affirmed.*

*Howell & Elgin,* for appellant.

*J. M. Wilson* and *C. R. Porter,* for appellee.

McCLAIN, J.—The grounds for divorce alleged in plaintiff's petition are that, although plaintiff has at all times conducted herself toward the defendant as a dutiful and loving wife, "the defendant, in total disregard of his vows of marriage, has been guilty of such cruel and inhuman treatment of plaintiff as to endanger her life; that he, within a few months of the marriage aforesaid, became cool and distant in his treatment and attention toward plaintiff, and would frequently make remarks in regard to plaintiff's condition, indicating a total absence of all love and affection, and seemed to desire to hold plaintiff up to ridicule, owing to her delicate physi-

cal condition; that defendant, within a few months after said marriage, would seldom, if ever, speak to plaintiff, and if at such times he did address himself to plaintiff it was in a short and formal manner, and would abuse the plaintiff at such times; that defendant, since a few months after the marriage stated above, has been uniformly unkind and unfeeling in his treatment of and regard for plaintiff, frequently intimating that he had no love or affection for plaintiff, and manifesting no interest in the society of plaintiff, and would refuse to take plaintiff to church or other social gatherings when requested to do so by plaintiff." It is further alleged that this course of treatment has had "a serious and ill effect on plaintiff's health to such an extent that her life was endangered thereby." It is also alleged that, not long before plaintiff's confinement, and with knowledge that it was soon to take place, defendant left her at the home of his father, and remained away until after the child was born, without making his whereabouts known to the plaintiff, or communicating with her. Defendant's motion for more specific statement of the grounds alleged in the petition was overruled, and a demurrer to the petition, on the ground that the facts stated therein were not sufficient to justify the court in granting the relief demanded, was also overruled. There was a trial on the merits, as the result of which a decree was granted to plaintiff, and defendant's appeal involves the action of the court in overruling the demurrer, as well as its action in granting the divorce on the evidence adduced. As there is no contention that the evidence went beyond the allegations of the petition, it will be sufficient for a disposition of the case that we determine the sole question whether the court erred in granting a decree to plaintiff.

The background of facts, as to which there is no substantial dispute, on which the parties attempt to build up their respective constructions of their relations to each other is briefly as follows: Plaintiff and defendant were married

in January, 1908, being each about twenty-three years of age; the plaintiff about two months older than the defendant. The courtship had extended over a period of three or four years. The parents of each owned and resided on large farms near Centerville and within a mile and a half of each other, and the acquaintance of plaintiff and defendant had commenced while they were living at the homes of their parents. Plaintiff had during the three years preceding the marriage 'been engaged as school teacher in Centerville, and defendant had worked on his father's farm until about six months before the marriage, when he attempted to conduct with his brother a feed store in Centerville on capital furnished by the father; but the enterprise was abandoned as a failure soon after the marriage. Returning from a short honeymoon, defendant took plaintiff to his father's home, where she assisted her mother-in-law in the housework, including the washing for her husband and his father and mother and at times a hired man, until after the 1st of October, when defendant's brother and his wife became members of the same common family. The defendant had no interest in the farm, nor partnership arrangement with his father as to the profits of conducting it, but with the general understanding that he was to receive $20 a month continued to reside with his father and assist him on the farm. Plaintiff frequently visited her parents, usually being taken to their home by defendant or his father. In the latter part of December, defendant went to Kansas City, accompanying his mother part of the way on a journey which she took, in order to visit her sister in Nebraska, and at Kansas City defendant joined his brother and engaged in the purchase of some cattle for their father; the 'brother returning home almost at once, leaving defendant to make the purchases. On January 14th, plaintiff, being still at the home of her father-in-law, was confined and gave birth to a child, and soon after that, with the child, left her father-in-law's home and went to the home

of her parents, where she still resides, having custody of the child. The defendant made no effort to communicate with the plaintiff after leaving her on the trip to Kansas City, even after he was aware of the birth of the child, and has never made any effort since that time to induce the plaintiff to resume with him the relation of wife, nor to secure the custody of the child, nor contribute to its support. On the other hand, the plaintiff has been unwilling, since she finally left the home of her father-in-law, to resume the relations of wife to her husband.

Much testimony was introduced for each party, for the purpose of throwing upon the other the blame for an estrangement which confessedly had arisen not later than October. With reference to this estrangement and its causes, the testimony for the respective parties is throughout absolutely contradictory and irreconcilable, and, although in some respects, the showing for defendant seems to preponderate, it must be remembered that the plaintiff was living with her husband's people, all of whom seemed to be prejudiced against her, and we are inclined to treat the aggregation of witnesses as of little consequence in arriving at the truth.

The following incidents we regard as being fairly well established by the testimony of plaintiff, which is corroborated to some extent by that of her parents and her sisters. In May, when plaintiff disclosed to defendant the fact that she was pregnant, the defendant expressed dissatisfaction with that condition in rather emphatic and profane terms, and proposed that she take medicine with the object of producing a miscarriage, and afterwards he gave her medicine to take, which he led her to believe was intended to produce that result. She took one dose of this medicine, which made her sick, and she refrained from taking more of it, although, for the purpose of escaping his violent condemnation of her objections, she pretended that she was continuing to take it. On account of her objections, defendant

characterized her as a stubborn little fool, and criticised her for being "too damned sanctified to take medicine." After this incident, there was a coldness between plaintiff and defendant, although the grievance of plaintiff seems to have been chiefly that defendant did not furnish her a separate home, and she was required to assist in the housework of a large family. Plaintiff felt that she was being slighted by defendant and regarded with disfavor in her father-in-law's household, although no physical violence was offered her, and nothing was done to reflect upon her character as wife. When plaintiff returned about October 1st, after a two weeks' visit to her parents, she testifies that her advances towards her husband for more amicable relations were repelled, and from that time on he occupied a separate room. He refused to speak to her; they had no conversation at the family table; and they sustained toward each other an attitude of belligerency. When defendant left for Kansas City in December, he did not advise plaintiff that he was going, nor bid her goodby, and remained away without communicating with her until after her child was born. It appears that plaintiff had told defendant's mother and sister that she did not expect to be confined until early in February. It cannot, therefore, be said that defendant was voluntarily absent from plaintiff at the time of her confinement early in January; but after he learned of the birth of a child he made no effort to communicate with plaintiff, and did not return until she had, with her child, left her father-in-law's home and returned to her parents. Since that time defendant has taken no steps towards a reconciliation, has made no offer to assist in supporting plaintiff or the child, and seems content to allow plaintiff and the child to remain away from him. The majority of the court, giving some weight to the decision of the lower court, based upon the conflicting testimony of witnesses appearing before it, reaches the conclusion that the relations of the parties were such, due to defendant's

fault, that a continuance of the marital relations was calculated to seriously impair plaintiff's health, and this is a sufficient ground for granting a divorce. *Luettjohann v. Luettjohann,* 147 Iowa, 286; *Wheeler v. Wheeler,* 53 Iowa, 511; *Caruthers v. Caruthers,* 13 Iowa, 266; *Beebe v. Beebe,* 10 Iowa, 133.

The writer of this opinion would be better satisfied with a different result.  He agrees with his associates in the view that the conduct of defendant in urging plaintiff to take medicine which he led her to believe was intended to produce a miscarriage was sufficient ground in itself for divorce, had plaintiff then, and as a consequence of such action on her husband's part, terminated the marital relation, and insisted that she would not subject her health and wellbeing to the consequences of any such conduct.  But she condoned this specific offense by continuing to live with defendant, and his conduct in this respect seems not to have been further the subject of difficulty between them. The writer is unable to see anything in the record establishing such a course of conduct of defendant toward plaintiff as to imperil her health after the incident above referred to until in October, and he is strongly inclined to the belief that the return of the plaintiff, after an absence of two weeks at her parents' home, with every indication of a permanent abandonment of defendant, was not with the purpose of resuming marital relations, but in pursuance of a plan to maintain her status on legal grounds.  It is shown beyond question that in October plaintiff and her parents consulted an attorney with reference to her rights, and the fact that defendant also consulted attorneys before he left in December for Kansas City simply illustrates the attitude of hostility which each party maintained towards the other.  Under these circumstances, it is not strange that defendant should have failed to advise plaintiff of his intended departure, or that he should have made no serious effort to bid her an affectionate adieu.  Soon after the

birth of plaintiff's ·child, she wrote defendant a letter, directed to his address as she ascertained it from a neighbor, which letter was registered, so that it could not be read by defendant without his returning to her a written acknowledgment of its receipt. This letter the defendant refused to receive, the reason now given by him being that he thought it was in the nature of a trap, and the writer is inclined to think that, although the letter contained protestations of affection and of a desire that defendant should return and resume conjugal relations, it was in fact written in order to assist in making out a case for divorce. The rather spectacular manner in which this letter was brought into court, unopened, by the plaintiff, and made a part of the record, seems to lend considerable support to this view. The writer is not therefore satisfied with the conclusions reached by his associates, and yet, as the whole question involved is one of fact, he does not feel justified in formally dissenting.

While the provisions for alimony and support of the child involve an aggregate payment in statements of a considerable sum, the monthly payments are not unreasonable. We see no occasion to modify the decree in this respect.

The judgment of the trial court is therefore *affirmed*.