NELLIE LEONARD, Appellee, v. RAYMOND F. LEONARD,
Appellant.

**DIVORCE:** Desertion—What Constitutes Desertion. The act of one
1   spouse in leaving the other does not amount to ''desertion,''
within the meaning of the divorce statutes, if the leaving was for
causes which would have justified a divorce to the one leaving.

**HUSBAND AND WIFE:** Separate Maintenance—Sufficiency of
2   Grounds. Separate maintenance may not be granted except for
causes which would justify a decree of divorce.

**DIVORCE:** Adultery—Evidence—Sufficiency. Evidence reviewed,
3   and *held* insufficient to establish the charge of adultery.

**HUSBAND AND WIFE:** Separate Maintenance—Evidence—Suffi-
4   ciency. Evidence reviewed, and *held* to justify a decree for
separate maintenance.

**DIVORCE:** Corroboration—Degree Required. No divorce can be
5   granted on the testimony of the plaintiff alone, yet the corrobora-
tion required may be circumstantial or direct, and need not go
to every point or touch every element of the marital offense
charged. (Sec. 3173, Code, 1897.)

*Appeal from Winneshiek District Court.*—A. N. HOBSON,
Judge.

TUESDAY, MARCH 14, 1916.

ACTION for separate maintenance, in which there was a
cross-petition, praying for a divorce. The cross-petition was
dismissed, and decree awarding separate maintenance entered.
The defendant appeals.—*Affirmed.*

*Parnell Shea* and *E. R. Acres,* for appellant.

*Clary & Condon* and *E. W. Cutting,* for appellee.

LADD, J.—I.  The parties were married September 14, 1904.  They lived together in Saint Paul, Minnesota, until January 1st following, and then moved to Devil's Lake, North Dakota.  After remaining there two months,

1. DIVORCE: desertion: what constitutes desertion.

they returned to Lawler, Iowa, where her parents resided.  After working there a short time, he went to Chicago, where he pursued a course of study in veterinary science, and began the practice thereof at Decorah in 1909.  There they lived until the latter part of March or fore part of April, 1911, when she, with their boy and girl, eight and two years old respectively, returned to her parents at Lawler.  This suit was begun April 10, 1911, but not heard until February, 1915.  The petition alleged cruel and inhuman treatment and adultery as grounds for divorce, but later prayed for separate maintenance only.  On September 30, 1913, the defendant filed a cross-petition demanding a divorce on the ground of desertion.  The allegations of these pleadings were put in issue, and only two are presented thereby:  (1)  Whether, prior to the departure of his wife, defendant was guilty of cruel and inhuman treatment, or (2) whether defendant was guilty of adultery; for, if plaintiff had not good cause for leaving defendant, she must be held to have deserted him, and the necessary period of two years had elapsed.  If she had good cause for so doing, leaving him was not desertion.  *Doolittle v. Doolittle,* 78 Iowa 691; *Kupka v. Kupka,* 132 Iowa 191.

On the other hand, to justify a decree of separate maintenance, the plaintiff must have had good cause—that is, one which would have constituted a ground for

2. HUSBAND AND WIFE: separate maintenance: sufficiency of grounds.

divorce—for leaving him.  *Shors v. Shors,* 133 Iowa 22.  As said then, to defeat the cross-petition and to maintain the suit for separate maintenance, there must have been such wrong on defendant's part as would have sustained a decree of divorce against him.

II.  The evidence was insufficient to establish the charge

of adultery. Though defendant, in an automobile, rode to Preston, Minnesota, with an unmarried woman, and entered her name and his in the register at a hotel where they had dinner, this was satisfactorily explained by his testimony that her father had employed him to treat a neighbor's cow, and that she had accompanied him to explain the matter and assist in locating such neighbor, who had moved to Preston since the services were rendered. If he did ask this woman to accompany him to a show, which he denied, she did not do so. No undue intimacy appears to have existed between them. The wife did find in his pocket an envelope postmarked Minneapolis, containing a letter in a woman's handwriting, signed by initials and addressed "My Dear Doc," in which the writer feared that another might lose out, and inquired what they would do without the keys to the courthouse and saying that when she was in need of money she would let him know, and asking him to come to Minneapolis whenever he could. His explanation that another person had given him the letter, to whom he returned it after procuring it from his wife, was not at all satisfactory; but all this fell short of proof of guilt. It raises only a suspicion of wrongdoing. There was another suspicious circumstance, and that was the refusal of the physician who attended her shortly before her departure to say what ailed her. As inquiry was made by the patient, no reason appears for not exacting an answer. These suspicious circumstances were insufficient to establish the charge of adultery.

3. DIVORCE: adultery: evidence: sufficiency.

III. Upon examination of the entire record, however, we are inclined to concur with the trial court in its finding that the defendant had been guilty of cruel and inhuman treatment. His wife was frail in body, weighing but 90 pounds, and had had two miscarriages, besides bearing the two children. He was above the average in size, weighing about 165 pounds. Aside from his denial, her testimony that his conduct towards her was "ugly and disagreeable," corroborated by witness

4. HUSBAND AND WIFE: separate maintenance: evidence: sufficiency.

called by defendant, was undisputed. She testified that he frequently cursed her and called her G—— d—— bastard; that he often struck her during the last year that they were living together; that, towards the last, he had said to her that he was tired of living with her and wanted her to get a divorce, and that, if she didn't get one soon, she would be carried out in a box; that during the last six months he had threatened bodily injury; that, shortly before she left, he struck her in the presence of Mrs. Marshall, and he was very angry; that she was in ill health at the time; that he struck her across the mouth in the presence of Miss Koch in 1910, cutting her lip so that her mouth bled; that his behavior grew worse and that he threatened to kill her; that she became very nervous, and she believed that she could not continue to live with him with safety. Her testimony as to being struck by him in the presence of Mrs. Marshall and Miss Koch was corroborated by them. His testimony that she had struck him and that she gave way to her temper at times is utterly without corroboration, and the suggestion of excessive jealousy is supported only by proof of a sarcastic remark and discharging a couple of lady boarders. No sufficient excuse for striking his wife when in ill health was adduced. Indeed, she appears to have been blameless, and to have contributed largely to their expenses by keeping boarders. Her testimony that she was in poor health at the time of separation was somewhat confirmed by her physician. Moreover, his utter lack of consideration for her is demonstrated by his subsequent conduct. He never requested her, after she left Decorah, to return. After she took up her home at Lawler, and since being ordered in February, 1912, to pay $140 as alimony and the additional sum of $150 in September, 1913, he has paid but $75 for her support, and remembered the boy with a cap and overcoat only, and the girl with a watch, bracelet, doll, and $10. He has been at Lawler several times during the three and one-half years between the beginning of the suit and the trial, but

without calling on her or the children. His excuse for such neglect is that, owing to trouble before she left, he was put under bonds to keep the peace; but, as he was discharged therefrom in April, 1912, even this was not in the way, during the years following. That the testimony of plaintiff, if sufficiently corroborated, established the charge of cruelty cannot well be doubted.

Section 3173, Code, 1897, declares that "no divorce shall be granted on the testimony of the plaintiff alone." The manifest object of this requirement is to prevent collusion. To that end, evidence other than that of complaint, either circumstantial or direct, tending to establish the ground charged for obtaining the divorce, must have been adduced. It was not necessary that it be sufficient to sustain the decree. Nor was it essential that the plaintiff's testimony be corroborated at every point or that it touch every element or ingredient of the marital offense alleged in the petition. Otherwise, the statute would work the defeat, rather than operate as a shield in the administration of justice. The very nature of the relation ordinarily precludes publicity, and often the most serious of marital offenses are committed in the privacy of the home, with no person other than the offending spouse and the victim of his wrong present. In *Clopton v. Clopton*, 11 N. D. 212 (91 N. W. 46), it was held that, where the whole case precludes possibility of collusion, the corroboration need be very slight; and in *Tuttle v. Tuttle*, 21 N. D. 503 (131 N. W. 460), that, "even though the corroboration is slight, if the acts testified to by her which are corroborated, tend to show a cause for divorce, and the other acts are in harmony with those of which there is corroboration—that is, of a nature which the corroborated acts show he possessed the disposition to commit— it may with much reason be contended that all such acts are corroborated." In *Andrews v. Andrews*, 120 Cal. 184, 186 (52 Pac. 298), the court laid down the rule that, "where the cruelty consists of successive acts of ill treatment, it is not

5. DIVORCE: corroboration: degree required.

necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff. It is sufficient corroboration if a considerable number of important and material facts are so testified to by other witnesses, or there is other evidence, circumstantial or direct, which strongly tends to strengthen and confirm the statements of the plaintiff." In *Clark v. Clark,* 86 Minn. 249 (90 N. W. 390), the court, speaking through Brown, J., says that "such evidence must tend in some degree to establish the fact sought to be proved, but need not be sufficiently weighty, standing alone, to constitute complete proof of the fact. The rule does not require that there shall be express corroboration of every item of evidence introduced to establish the fact contended for. It is sufficient if it tends, in a general way, in that direction." See extended note in *Tuttle v. Tuttle,* Ann. Cas. (1913 B) 1. Plaintiff's story of the defendant's ill treatment and personal violence was corroborated by the testimony of the two witnesses; and his subsequent indifference concerning her welfare and that of the children, in connection with the letter found in his pocket, and his attention to the farmer's daughter, tended to corroborate her testimony of his insistence that she leave him and obtain a divorce. Even though the bodily injuries inflicted by him may not alone have been sufficient to establish cruelty, certainly this, in connection with his other acts, and especially his insistency that she leave him, might well have produced grievous mental suffering, such as would have been likely to impair her health and thereby endanger her life. We are not inclined to interfere with the decree entered by the district court.—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.