KATHRYN L. ELLSWORTH, Appellee, v. BENJAMIN ELLSWORTH, Appellant.

No. 42673.

OCTOBER 16, 1934.

Jones & White, for appellant.

Gilmore & Moon, for appellee.

KINTZINGER, J.—Plaintiff and defendant were married in November, 1920. At the time of the trial in October, 1933, plaintiff was 36 years of age and the defendant 35, so that the parties were respectively about 24 and 23 years of age at the time of their marriage. With the exception of a short interval, they lived together until 1933. They had no children. At the conclusion of the trial in the lower court, plaintiff was granted a decree of absolute divorce, and a judgment for alimony in the sum of $40 per month for a period of five years.

The insufficiency of the evidence in support of the decree for a divorce is not presented for consideration, and there was no appeal therefrom. It is conceded by both parties that the proof substantiates the trial court's action in granting the divorce, but as no appeal was taken from the decree of divorce, that must be allowed to stand. Ensler v. Ensler, 72 Iowa 159, 33 N. W. 384; Fitch v. Fitch, 207 Iowa 1193, 224 N.·W. 503; Mitvalsky v. Mitvalsky, 191 Iowa 8, 179 N. W. 520.

The only question·raised on this appeal is in regard to the judgment for alimony. Both parties to this action are well educated, and are graduates from Grinnell College at Grinnell, Iowa. Their marriage was the result of a romance started at college. Plaintiff's parents lived at Marshalltown and defendant's parents lived at Ottumwa. The parents of both parties were well to do, each having been engaged in a lucrative and successful business. After the marriage, the parties moved to Ottumwa, where the defendant was employed by his father's firm at a salary of $125 per month. Both parties also received additional help from their parents. Plaintiff's father retired from business a few years ago, moved to California, and is reputed to be fairly well to do. The defendant's father died a few years ago, and defendant was continued in the employment of his father's firm as before. After his father's death, he was given additional employment by his mother to look after her property,

for which she paid him the sum of $50 per month. This payment continued until a few months before the trial of this case. When the defendant's father died, the defendant was left a bequest of $15,000 subject to a life estate in his mother. His mother was 75 years old, and he transferred this bequest to his mother, for the purpose of enabling her to maintain her same station in life as before.

The testimony also showed that the defendant, at the time of the trial, was the owner of certain industrial stocks of an aggregate value of about $2,310, but that his liabilities were about $3,900, which included a loan of over $500 against his life insurance policy. Defendant is therefore indebted for more than his present property is worth. Consequently there is no physical property out of which any alimony can be provided for or paid. The evidence shows, on the other hand, that the plaintiff, through savings and gifts received from her parents, accumulated about $2,000, now invested in stocks. Appellant therefore contends that no alimony whatever should be allowed to the plaintiff.

It is the rule of law, however, that in determining the question of alimony, many elements may be taken into consideration, one of which is the present financial status of the parties. If that was the only element to be considered when fixing the amount of alimony, of course, appellee would not be entitled to anything. There are, however, numerous other elements which enter into the problem of fixing the amount of alimony to be awarded in a divorce action. Fitch v. Fitch, 207 Iowa 1193, 224 N.W. 503; Zuver v. Zuver, 36 Iowa 190; Ensler v. Ensler, 72 Iowa 159, 33 N.W. 384; Evans v. Evans, 159 Iowa 338, 140 N.W. 801; Nelson v. Nelson, 193 Iowa 464, 186 N.W. 904; Black v. Black, 200 Iowa 1016, 205 N.W. 970; Schorr v. Schorr, 206 Iowa 334, 220 N.W. 31.

Some of the elements to be considered are stated in Black v. Black, supra, loc. cit. 1018, where we said:

"The court does and should take into consideration the sex, age, health, future prospects of the parties, the private estate of each, the contributions of each to the joint or accumulated property, * * * *the earning capacity of each,* their respective incomes, and their respective indebtedness. These and other facts pertaining to the case are sufficient to enable a court to arrive at a just, fair, and equitable decision in the matter."

In Fitch v. Fitch, supra, loc. cit. 1196, we said:

"Resultantly, each case must stand upon its own facts. When applying those rules to the instant case, it is found that neither husband nor wife has any property. So far as appellant is concerned, he appears to be indebted about $2,300. There is no ability to pay on his part out of property holdings. Whatever, therefore, appellant pays his wife must be from future earnings."

In that case there was an award of $5,000, and $150 per month as permanent alimony against the defendant. In view of the fact that the defendant had no present personal property, the $5,000 award was stricken out, but the allowance of $150 per month was allowed to stand.

In the case at bar, although the plaintiff had securities valued at about $2,000, the evidence shows that the income therefrom would not be sufficient to keep her. The lower court held, and we also find from the evidence in this case, that the plaintiff was quite frail and had been and was suffering from some kind of spinal trouble, and is unable to make a living without receiving outside help; she has no special training to follow any particular avocation. On the other hand, the evidence shows that the defendant is a strong, healthy, active, capable young man, 35 years of age, and at the time of the trial was earning $125 per month and up until a few months before the trial had been earning $175 per month. Defendant offered a schedule showing his living expenses to be $144.75 per month. This, however, included the expense of keeping a separate home, and $60 per month for meals. The defendant claims that the $50 a month received for looking after his mother's property was discontinued about two months before the trial. The evidence shows that the defendant's mother maintains a separate home in Ottumwa, and will be glad to have her son live with her. This fact is not controlling, but in view of the fact that he was earning an additional $50 per month for looking after his mother's property until two months before the trial, it is fair to assume that he could change his living conditions so as to reduce his expense account sufficiently to enable him to pay $40 per month to his wife for the period of five years, as allowed by the lower court, without any great hardship on him. Under such circumstances, his earning power would be equivalent to at least $175 per month. An award of $40 per month for a period of five years, if she remained un-

married during that time, would not be excessive. In reaching this conclusion, we do not wholly ignore the relations existing between the parties hereto and their parents, and any probable expectations resulting therefrom. That such an award is not excessive is supported by the case of Nelson v. Nelson, 193 Iowa 463, 186 N. W. 904. In that case the defendant had no real or personal property and his average earnings were about $135 per month. The court awarded the plaintiff alimony in the sum of $3,600, payable $15 per month, for keeping and educating their child, until the full amount was paid; and granted her a further award of permanent alimony in the sum of $7,200, payable at the rate of $30 per month, until fully paid. In that case we said:

"Under all of the circumstances disclosed in the record, we do not think an award of $15 per month for the support of the child for a period of 20 years, and of $30 for the support of the wife for a like period, to be made in monthly payments, was excessive or unreasonable. Our statute, permitting modifications of decrees awarding alimony, affords opportunity for a change in the terms of such decree in the future, if the conditions of the parties should so substantially change as to render such a modification just and proper."

For similar reasons, under the facts disclosed by the evidence in this case, we believe the judgment of the lower court was right, and the same is hereby affirmed.

MITCHELL, C. J., and STEVENS, CLAUSSEN, and ANDERSON, JJ., concur.