INA M. KLEPPER, Appellee, v. PAUL H. KLEPPER, Appellant.

No. 46517.

JULY 28, 1944.

O'Brien & Molloy, of Independence, for appellant.

Hubert J. Swift, of Manchester, for appellee.

HALE, J.— Plaintiff, Ina M. Klepper, in May 1943 brought suit for divorce against defendant, Paul H. Klepper, on the ground of cruel and inhuman treatment. On trial there was decree granting plaintiff divorce, alimony, custody of and provision for support of the two children, and costs. From this decree defendant appeals, stating two propositions relied upon for reversal.

Appellant and appellee were married May 19, 1932, and separated May 16, 1943. They have two children, a son ten years old and a daughter eight years of age. For a few months after their marriage the couple lived with appellant's father and then with appellee's parents. In 1933 they moved to Delaware, Iowa, and lived by themselves. For a while after their marriage appellant drove a school bus. In 1936 they moved to Waterloo, and in January 1938 they moved to Winthrop, Iowa, where they operated a grocery store until May 16, 1943. They lived in rooms above the store. According to appellee's testimony, she kept house, did the cooking, washing, ironing, and all the usual housework, besides taking care of the children, and was employed the rest of the time in the store. She received no wages for her work in the store. The last year they lived together appellee had some assistance with the household work for about two hours on Saturday mornings. Some of the work performed by her in the store, besides waiting on customers, was heavy, such as carrying groceries, sugar, etc., and placing them on the shelves. Besides this she testifies she carried coal and ashes for the large heating stove upstairs.

Apparently there was no serious trouble between the couple during the first year of their married life, but appellee testifies that after that time appellant had a general habit of cursing and swearing continuously and quarreling with her and the children. He complained about her visiting her parents, and one time, on account of unpleasant conditions in the family, she went to her parents' home and stayed for about four weeks, but she and her husband became reconciled and she went back to him and remained until May 1943. She complains of being struck by him a short time before the birth of their second child, of his use at various times of vile epithets, and of his denial that he was the father of the second child. He was sullen and morose in his

conduct and abusive and domineering in his talk to her and the children. He did not manifest any love for her and complained about the expense in connection with the birth of their daughter. Appellee further testifies as to repeated physical violence and that he did not speak to her or the children for days and weeks at a time. She complains of his cursing and swearing in the presence of the children and of his sullen conduct in the presence of her relatives. She testifies he swore at the children and complained about the way she was training them and accused her of trying to make the children dislike him. She states that she tried in every way to get along with her husband.

The incident which resulted in her leaving occurred about 4:30 in the afternoon on Sunday, May 16, 1943. The family were together. He pinched her, and when she told him that it hurt and asked him to stop he became angry and cursed and swore and struck her, knocking her against the wall and down on the floor, besides choking her. As a result she received a black eye and injury to her face, nose, and throat. She then hired a man to take her and the children to Oneida and she lived there with her parents about two weeks until she rented a small house, where she was still living at the time of trial. Part of the time she worked in a canning factory in Manchester and she also received help from her father. The foregoing is, in substance, appellee's testimony.

Appellee complains that the treatment and physical violence caused her to become sick and nervous and lose weight. On the day following the Sunday encounter she went to Manchester and saw Dr. Byers, who examined her. The doctor testified that she was nervous and feared to continue to live with her husband. He stated there were finger marks and nail marks on her neck; discoloration, scratches, and swelling under her left eye; bruises on the forehead and nose, and bruised spots on her shoulder and spine. He stated the effect of this conduct would be injury to her health and that a continuation of such treatment would endanger her life.

There is testimony by a brother of appellee as to statements and admissions made by appellant in May 1943. The witness testified that appellant found fault with his sister and admitted that he had struck her. There was also similar testimony by a

brother-in-law as to such admissions by appellant in conversations. The housekeeper who assisted Mrs. Klepper on Saturdays testified as to the heavy work performed by appellee, and Mrs. Hokanson, appellee's sister, testified to abusive language by appellant. Besides the husband and wife, the only witnesses to the occurrence on May 16, 1943, which led up to the separation, were the two children, Paul and Geraldine. They were interrogated by the court prior to giving their testimony and held to be competent. In general, their testimony supports that of their mother as to the trouble on May 16th and the general treatment of the mother and the children by the father.

Appellant's version of the trouble on the Sunday afternoon in May was that his wife struck him first and that he slapped her but he denied that he hit her with his fist. He claims that she grasped a sore finger of his at the time and that this was the only occasion upon which he had struck his wife during their married life. He denies further that he ever said he was not the father of either or both of the children and denies cursing or swearing in the store or at home. In effect, his testimony was a general denial of the main statements of appellee. Appellant's father, who had lived with the family for a time, also added his denial to that of his son, stating he never saw appellant strike his wife or the children or curse them. Appellant also complains of his wife's failure to prepare his food in conformance with a dieting program which he was following on account of ulcers of the stomach, but she denied this, stating that appellant refused to follow the diet.

The court found appellant was guilty of such cruel and inhuman treatment of his wife as to endanger her life if she longer lived with him and granted her a decree of divorce.

I. Appellant urges that the lower court erred in finding appellant guilty of such cruel and inhuman treatment as to endanger the life of appellee. We believe the evidence was sufficient. Appellant cites Sylvester v. Sylvester, 109 Iowa 401, 80 N. W. 547; Wells v. Wells, 116 Iowa 59, 89 N. W. 98; Hickman v. Hickman, 188 Iowa 697, 176 N. W. 698, 14 A. L. R. 929; and Hill v. Hill, 201 Iowa 864, 208 N. W. 377. In the Sylvester case it was found that the life of the plaintiff had not at any time been endangered. Such is also the holding in Wells v. Wells,

supra. In the Hickman case the decree of the lower court granting a divorce was affirmed and the statement that the cruelty must be dangerous to life is recited. The case of Hill v. Hill, supra, repeats this well-known rule.

It is well known, and has many times been stated by this court, that every action of this kind must depend upon its own facts and that in no two cases are the facts the same. In a recent case, Littleton v. Littleton, 233 Iowa 1020, 1024, 10 N. W. 2d 57, 59, an opinion by Justice Bliss, it is stated:

"Precedent is of little value in the determination of cases of this character, because in each case the factual situation is different."

We are satisfied that in the instant case the testimony was sufficient to authorize the decree of divorce to appellee.

■ II. Appellant's second proposition is that appellee's testimony was not sufficiently corroborated. With this we do not agree. In corroboration of part of appellee's testimony was the testimony of the two children, which the court found, and we think the record shows, was admissible. There was also the testimony as to admissions of appellant, and other testimony which was such corroboration as is contemplated by the law and our many decisions. The appellee was not, and could not be, corroborated as to every detail, nor is this required. The rule is stated in Davis v. Davis, 228 Iowa 764, 768, 292 N. W. 804, 805:

"The corroboration of the plaintiff may be by either direct or circumstantial evidence, tending to establish the grounds alleged. It is not essential that it alone sustain the decree, or that it support the plaintiff's testimony at all points or in all of its parts. Such a strict requirement might oftentimes frustrate justice owing to the privacy of domestic relations." (Citing cases.)

This is the general rule and it has been many times repeated by this court. It is unnecessary to cite further authorities. We are satisfied that the corroboration was sufficient.

■ III. We have often held that in cases of this kind, where the testimony is in conflict, we give serious consideration to the decision of the trial court, which had the opportunity of hearing and observing the witnesses. In our recent case of Robbins v.

Robbins, 234 Iowa 650, 652, 12 N. W. 2d 564, 565, Justice Smith, citing and quoting from Massie v. Massie, 202 Iowa 1311, 1312, 210 N. W. 431, 432, states:

"We have repeatedly said: 'In cases of this kind, although they are in equity, and triable de novo here, in the presence of a serious conflict in the testimony, we are disposed to give serious consideration to the decision of the trial court, in determining final disposition of the case here.'" (Citing cases.)

We hold that the court was right in granting the decree of divorce. No issue is made as to the amount of alimony or child support. The case should be, and is, affirmed.—Affirmed.

All JUSTICES concur.