RAY E. DILLAVOU, Appellant, v. MARGARET DILLAVOU, Appellee.

No. 46588.

FEBRUARY 6, 1945.

George J. Dugan and Ray F. McManus, both of Perry, for appellant.

Frank R. Thompson, of Stuart, and Maher & Mullen, of Fort Dodge, for appellee.

HALE, C. J.— This is an action for divorce brought by Ray E. Dillavou, plaintiff, based on alleged cruel and inhuman treatment. Defendant, Margaret Dillavou, filed an answer and cross-petition for divorce on the grounds of cruel and inhuman treatment, asking alimony, support, and suit money. On trial there was a decree for defendant on her cross-petition, awarding her $3,500 alimony and expense and suit money. From this decree plaintiff appeals, alleging failure of defendant to establish such cruel and inhuman treatment as would endanger her health and life under the statute, and further alleging that the alimony awarded was in excess of any amount justified by the facts, and that he should have been awarded a decree of divorce in his favor.

The marriage of the parties took place December 24, 1940. Appellant at the time was a widower with one child, a daughter, who lived in his home and at the time of trial was about fourteen years old. He lived about two and one-half miles south of Bagley on a farm of one hundred sixty acres owned by him. In addition to his own land he farmed other lands in the vicinity. He owned a considerable amount of personal property. After the marriage he purchased on contract, at $136.75 per acre, one hundred and twenty acres, upon which he paid $1,500. The appellee, thirty-seven years of age, had also been married, but had been divorced in South Dakota, the decree awarding her custody of two adopted sons, Phillip and James, aged at the time of trial thirteen and nine years, with an allowance for their support of $45 per month. This money was paid to her until sometime after her second marriage, when her former husband ceased making the payments.

On September 6, 1940, appellee went to work as a housekeeper for appellant, receiving $3 per week and a home for herself and two sons. She continued in that capacity until the marriage, and the evidence indicates that the parties were congenial until six or eight weeks after the marriage, when there was trouble between them regarding appellant's cruel treatment of a cow. Following this there were repeated quarrels and

violent conduct between husband and wife regarding other matters, mostly connected with the farm work. Appellant had a violent and apparently uncontrolled temper and was addicted to the use of profanity at all times and places. Even in court he was twice admonished by the judge to cease swearing.

Both husband and wife appear to have been hard-working. The latter, with the assistance of appellant's young daughter, handled the necessary housework on a large farm. Appellee, according to her testimony, which in this respect is not disputed, worked from five o'clock in the morning until ten o'clock at night, in the house and in the fields, cutting oats and husking corn, taking care of the eggs and chickens, and at times assisting in the care of the livestock. There is no complaint that appellee did not do her full share. She had charge of the chicken and egg money but so much as was necessary was used for supplies needed for the family. · The many duties of a busy wife on a large farm seem to have been handled by her efficiently and without complaint.

I. The main cause of· disagreement between the parties, as we read the record, arose out of the impatient and violent temper of the husband. Many incidents are recited by the various witnesses not necessary to review in detail. They arose from various matters, mostly connected with the conduct of operations on the farm. One was appellant's alleged abuse of a cow, heretofore referred to; another occurred while Mrs. Dillavou was cutting oats and caught the blade of the cutter in the fence. The punishment of one of her boys by appellant precipitated a quarrel. Another resulted from the difficulty in recovering some hogs which had escaped, and still another quarrel occurred while some colts were being loaded. Other incidents of like character constituted a part of the life of these ill-adjusted people, resulting at times in blows being exchanged and a considerable amount of bitter language. With most married couples these conflicts could have been adjusted or would not have occurred. But in this case neither party was of that sensitive nature which goes far to avoid conflict. There is no doubt in our minds, however, but that it was the violent · nature and actions of appellant which were the main inducing causes of the various quarrels which resulted in the unhappy

situation in which the parties eventually found themselves. Not that appellee was always without fault; but a careful read-ing of the record convinces us that had it not been for the sudden bursts of temper on the part of appellant, which in most instances stirred up the conflicts, the disputes would not have occurred. So concluding, we find that appellee is entitled to relief and find from the record that there was cruel and in-human treatment of appellee by appellant. The corroboration was sufficient.

■ II. Appellant argues that the treatment of appellee was not such as to endanger her life or health. It is true that the treatment, to entitle a party to a divorce, must be of that nature. It is so prescribed by statute and we have many times so held, but we are satisfied that the evidence here so shows. The constant profanity, in the presence of others, by appellant, his choking of her on one occasion—even though the controversy was participated in by appellee—the many other incidents shown in the record, the unhappy situation in the household, brought about, as we have said, mainly by appellant's temper and con-duct, are shown by appellee's testimony to have affected her health. Appellant testified on the witness stand, in answer to a question regarding his treatment of her on one occasion, ''Yes, I did [with an oath], and I would do it again if I had to, and more too.''

We have held that there may be treatment that endangers life even if without physical violence. Low v. Low, 232 Iowa 1114, 7 N. W. 2d 367, citing Doolittle v. Doolittle, 78 Iowa 691, 43 N. W. 616, 6 L. R. A. 187; Shook v. Shook, 114 Iowa 592, 87 N. W. 680; and Aitchison v. Aitchison, 99 Iowa 93, 68 N. W. 573, and cases cited. In the present case, however, there was some physical violence.

III. It is claimed by appellant that appellee was guilty of cruel and inhuman treatment. The district court found appel-lant to be the guilty party. Under the evidence we agree with its finding and do not consider it necessary further to review it.

■ IV. Appellant argues that generally a divorced wife is allowed such share of the joint property as is reasonable under the circumstances. This is true. But the trial court in making

its ruling on the motion for new trial carefully examined the financial situation of the parties, and states that $3,500 was the lowest figure considered at any time and that, while the record showed the parties were married only a little more than three years, it is also shown without dispute that while appellant had approximately the same property at the end of the three years his debts had been materially reduced. The court further states the record shows that appellee worked in the fields, did housework and chores, and concludes that appellee helped in cutting down the indebtedness of appellant. Of course, many considerations enter into the matter of alimony: the length of marriage; the industry, or lack of it, of the various parties; the necessity and ability to work; and many other matters. In its first ruling on the case the court found a conservative estimate of the value of appellant's property to be around $28,000 or $30,000, ignoring the farm purchased under contract and on which $1,500 had been paid.

V. In this connection we may consider another objection made by appellant, charging as erroneous the court's action in fixing the amount of the permanent alimony, alleging the court took into consideration the fact that the payments by appellee's former husband of $45 per month had ceased and there was no showing that appellant had any connection with the termination of such payments or that the legal right to enforce the payments had terminated.

The court in ruling on the motion for new trial stated that it did not believe it used any wording in its original ruling which would justify the theory that the court was of the opinion that appellee's former husband was not legally liable any more, but that it had in mind the fact that there were payments of $45 per month which had been paid to appellee and after her marriage they ceased and she no longer received them. The court took into consideration the situation of the parties at the time. As we read the record, we do not think that the cessation of the payments to the children entered into the allowance of alimony. Apparently neither party to this action made any effort to have the payments renewed, although both knew they had ceased, whether appellee was legally entitled to them or not.

It might also be considered that by the marriage to the mother appellant assumed a legal obligation of a father to support the minor children. Rule v. Rule, 204 Iowa 1122, 216 N. W. 629, and cases cited. But, aside from this legal obligation, we are satisfied the allowance was not excessive.

■ VI. Appellant's final objection to the decree of the district court is that the court erred in disregarding the uncontradicted evidence of appellant and finding as a matter of law that the acts and conduct of appellee were justified and excused by the temperament and demeanor of appellant based upon his appearance while a witness in the case. We do not think the court's finding was so based. But it was proper the court should consider the appellant's appearance and conduct in determining the credibility which should be given to his testimony. We have often said in divorce cases that we give very serious consideration to the decision of the trial court, which had the opportunity of hearing and observing the witnesses and is in a better position to appraise their testimony given orally in its presence than we are from the printed record. Klepper v. Klepper, 234 Iowa 1138, 1142, 15 N. W. 2d 213, 215. There we state:

"In our recent case of Robbins v. Robbins, 234 Iowa 650, 652, 12 N. W. 2d 564, 565, Chief Justice Smith, citing and quoting from Massie v. Massie, 202 Iowa 1311, 1312, 210 N. W. 431, 432, states: 'We have repeatedly said: "In cases of this kind, although they are in equity, and triable de novo here, in the presence of a serious conflict in the testimony, we are disposed to give serious consideration to the decision of the trial court, in determining final disposition of the case here." ' "

See, also, Littleton v. Littleton, 233 Iowa 1020, 10 N. W. 2d 57; Votaw v. Votaw, Iowa, 6 N. W. 2d 1; and Davis v. Davis, 228 Iowa 764, 292 N. W. 804, and cases cited therein.

There was a motion by appellee to dismiss appellant's appeal, asking that appellant's argument be stricken and the appeal dismissed on the ground that appellant had failed to comply with an order of court for payments to appellee pending the appeal. This motion was submitted with the case. However,

it need not now be considered, as the facts constituting the grounds of the motion no longer exist.

We have examined the entire record with care and find the decree of the district court was warranted. The case should be, and is, affirmed.—Affirmed.

All Justices concur.