VERLEE NEFF, Appellee, v. WILBER NEFF, Appellant.

No. 46751.

DECEMBER 11, 1945.

OLIVER, J.— Appellee, Verlee Neff, and appellant, Wilber Neff, were married in January 1940. She was then eighteen years old; he was twenty-nine. They lived on a farm about two miles from the farm of appellee's parents. They separated in August 1944. At that time they had two children, Twyla Jean, aged three years, and Larry, aged fourteen months. A third child was born three weeks later and was about two months old at the time of the trial.

Appellee testified appellant was overbearing; that he beat

her once during the first year of their marriage and since then frequently threatened to beat her, the last occasion having been several months before the separation and when appellee was pregnant and very nervous; that in the last few months nothing she did satisfied him, that "he was always wanting to pick an argument," that he told her he did not care what happened to her, and that his treatment made her so nervous it affected her health and she feared it would affect her unborn child. In July 1944 he refused to talk to her "and finally he said he just couldn't stand me, any longer, and I had to go home. I didn't want to go home. I begged him to let me stay." He said, "Take a suitcase and go home." He took her and the children to her parents' home and told her to stay there. He testified he told her parents "she was getting sloppy and dirty around the house, didn't take care of her skin [she had suffered from a chronic skin ailment since childhood] and wouldn't take care of Larry's skin * * * ."

A month later she returned to appellant. She testified she tried to stay there and stayed another month but "just couldn't stand it. He wouldn't talk to me any more * * * he just acted like I never existed." He testified "she came to me one night whining because I just didn't pay much attention to her * * * and I told her I just absolutely wasn't going to touch her or wasn't going to do a thing, was just going to act as if she wasn't in the house until she went ahead and done that of her own accord, because I was through telling her." The morning she left "she was bawling, and told me she wasn't going to live that way any more, she was going home."

Appellant later said he "didn't care whether she came back or she didn't." At the trial he testified: "I am still interested in the children. As far as she is concerned I don't care."

Appellee's testimony was supported by the testimony of her parents. Although appellant's recital of the marital difficulties was somewhat different, it was, in the main, an attempt to justify rather than to deny the conduct with which he was charged. Apparently his counterclaim for divorce was forgotten.

I. Appellant contends the showing of cruel and in-human treatment was insufficient to warrant a divorce. It is well settled that cruel and inhuman treatment may be estab-lished without proof of physical violence. Lewis v. Lewis, 235 Iowa 693, 17 N. W. 2d 407; Dillavou v. Dillavou, 235 Iowa 634, 17 N. W. 2d 393; Low v. Low, 232 Iowa 1114, 7 N. W. 2d 367.

It is also the rule that in cases of this kind the findings of the trial court should be given much weight. Robbins v. Robbins, 234 Iowa 650, 12 N. W. 2d 564; Littleton v. Little-ton, 233 Iowa 1020, 1024, 10 N. W. 2d 57. The trial court found that appellant's treatment of appellee was cruel and inhuman and did endanger her life. There is ample support in the record for that finding and we agree with it.

II. The judgment recites that during the trial, at the suggestion of the court, a conference was held in the court's chambers to discuss the possibility of a reconciliation, dur-ing a portion of which the court was present; "that after the conference and before the parties had left the courthouse, but not in the physical presence of the Court, and for provo-cation, if any, unknown to the Court, the defendant struck the father and mother of the plaintiff with such violence as to cause both to bleed profusely from the face and nose."

Appellant contends the judgment of the trial court was based in part upon the foregoing finding; that said finding was based upon matters which transpired outside of the court-room and are not in evidence, and hence that the judgment is erroneous. It is sufficient answer to this contention that the judgment affirmatively shows the finding of cruelty was based solely upon the treatment of appellee prior to the trial.

III. The judgment awarded appellee the custody of the three children and gave appellant the right of visitation at appellee's home for two hours once each month, at a reason-able hour specified by appellee. Appellant asserts said limi-tations are unreasonable. Here again the finding and order of the trial judge who saw and heard the parties and their witnesses are entitled to much weight. A consideration of the printed record leads us to conclude we should not inter-fere with this part of the judgment.

72

Appellant also complains of the amount of the judgment for alimony for appellee and support money for the maintenance of the children. Without discussing this proposition in detail it may be said that the record shows such allowances were reasonable and proper.—Affirmed.

All JUSTICES concur.