EDNA GERTRUDE BRANNEN, Appellee, v. PAUL JOHN BRANNEN, Appellant.

No. 46817.

FEBRUARY 5, 1946.

Raymond E. Hanke and Powers, Sloane, Woodcock & Orebaugh, all of Des Moines, for appellant.

Carl A. Burkman, of Des Moines, for appellee.

GARFIELD, J.—Plaintiff, Edna Brannen, and defendant, Paul Brannen, were married in August 1927. Their home was in Des Moines. They separated in December 1944. This action for divorce, commenced in January 1945, was tried the following June. The decree granted plaintiff a. divorce, custody of the children (a girl seventeen, a boy fourteen, and a girl eight), and alimony. Defendant's first contention here is that the evidence is insufficient to prove he was "guilty of such inhuman treatment as to endanger the life of his wife." (See section 10475, Code, 1939.)

I. In cases of this kind the findings of the trial court are entitled to much weight. Neff v. Neff, 237 Iowa 69, 71, 20 N. W. 2d 916, 917, and cases cited. There is sufficient support in the evidence for the trial court's finding that defendant was guilty of such inhuman treatment as to endanger plaintiff's life. We reach the same conclusion.

It is well settled that there may be inhuman treatment which is a cause for divorce without physical violence. Neff v. Neff, supra, and cases cited. However, here there is evidence of physical violence. Open and brazen admissions of adultery have been held to amount to such inhuman treatment. Schnor v. Schnor, 235 Iowa 720, 17 N. W. 2d 375, 157 A. L. R. 628, and annotation 631. Conduct of one spouse

with others of the opposite sex, even without adultery, may constitute inhuman treatment. Annotation 157 A. L. R. 628, 636–640. Excessive sexual demands upon the wife may amount to such treatment. Hines v. Hines, 192 Iowa 569, 185 N. W. 91; 17 Am. Jur. 187, section 76; 14 Iowa L. Rev. 266, 270. It has been frequently held that unwarranted charges of infidelity may constitute inhuman treatment. Williges v. Williges, 215 Iowa 960, 247 N. W. 222; Schneckloth v. Schneckloth, 209 Iowa 496, 499, 228 N. W. 290, and cases cited; annotation 143 A. L. R. 623.

Plaintiff testified: When defendant was angry he would grab her by the neck and hurt her; shortly before her boy was born defendant struck her and knocked her against the sink—she and her doctor were both concerned about her condition; when the boy was a baby defendant pulled her out of bed, "knocked her around with his fists," and kicked her with his heavy work shoes because she did not want to get up in a cold house but wanted him to fix the fire; on another occasion he beat her with his fist and as a result medical attention was required; he had a violent uncontrollable temper; he used profane and abusive language toward her in the presence of the children; on one occasion defendant threatened to strike her with a milk bottle but a boarder stepped in and stopped him; "he often said he would slap her damn mouth, knock her teeth down her throat, and things like that."

Plaintiff also testified: Six years before the trial defendant contracted a venereal disease (he admitted this but offered the improbable explanation that he acquired the disease from cleaning toilets at his place of work); during the three months he was treated for the disease plaintiff was required to keep his medicines, wash his clothes separately, and sleep with him (but it does not appear defendant communicated the disease to her); before each child was born defendant intimated to plaintiff that he did not want children and suggested an abortion; "before my boy was born he suggested a doctor that some woman he had relations with suggested to him to go to"; with few exceptions, defendant demanded that plaintiff have intercourse with him every night.

One of the principal sources of trouble between the par-

ties was that defendant frequently made improper advances toward other women who reported such conduct to plaintiff. Plaintiff's twenty-three-year-old sister and thirty-eight-year-old half-sister both testified that defendant made improper advances toward them at numerous times. Another woman told of such conduct by defendant toward her on one occasion. Plaintiff testified defendant told her he had desires toward her younger sister and ''never would be satisfied until he had sexual relations with her''; defendant frequently called himself ''God's gift to women''; he ''told her of his association with other women all along''; when plaintiff asked him to refrain from such conduct he promised he would. Plaintiff said the cause of the final separation was defendant's failure to keep his promise not to bother other women, especially her sister, and her inability to trust him. At this time defendant, with an oath, threatened to strike plaintiff with a flashlight.

There is also substantial evidence that defendant made unwarranted charges of infidelity against his wife.

Defendant admitted some of plaintiff's testimony but denied much of it. However, some of his answers, especially regarding some of his conduct with other women, were evasive and hard to believe. As is usual, defendant's version of some of the incidents testified to by plaintiff differs from hers. The trial judge evidently believed plaintiff's story in the main. We think he was justified in so doing.

Of course, the inhuman treatment that is a cause for divorce must endanger life. Code section 10475; Klepper v. Klepper, 234 Iowa 1138, 1142, 15 N. W. 2d 213, 215; Siverson v. Siverson, 217 Iowa 1167, 1171, 251 N. W. 653, and cases cited. There is sufficient showing that defendant's treatment of his wife impaired her health and thereby endangered her life.

II. We find no merit in defendant's contention that plaintiff's testimony lacks the corroboration required by Code section 10474.

The main reason that corroboration is required is to prevent collusion between the parties. Davis v. Davis, 228 Iowa 764, 768, 292 N. W. 804; annotation 65 A. L. R. 169, 175;

17 Am. Jur. 337, section 384. Corroboration may be by either direct or circumstantial evidence tending to establish the grounds alleged. It is not necessary that the corroboration alone sustain the decree or that it support all parts of plaintiff's testimony. Such a strict requirement might often frustrate justice, because of the privacy of domestic relations. Davis v. Davis, supra, and cases cited; Klepper v. Klepper, supra, 234 Iowa 1138, 1142, 15 N. W. 2d 213, 215.

The seventeen-year-old daughter testified to the milk-bottle and flashlight incidents and that her father had the habit of being angry toward her mother; he used much profanity toward plaintiff and the children; he threatened her mother "lots of times." Plaintiff's sister corroborated plaintiff as to one act of physical violence many years before and testified at length concerning defendant's improper conduct toward the witness. Further, defendant's own testimony corroborates some parts of plaintiff's story. See McClurg v. McClurg, 207 Iowa 271, 272, 222 N. W. 862; annotation 65 A. L. R. 169, 176; 17 Am. Jur. 338, 339, section 386. Upon the entire record we have no doubt of the sufficiency of the corroboration.

III. Nor are we able to sustain defendant's complaint against the trial court's division of the property and award of support money. Plaintiff was given the home, valued at $5,500, household goods, and seven $25 war bonds. Defendant was required to pay plaintiff $250, to pay all outstanding bills for family necessaries, and $100 per month for the support of the children. When the daughter, seventeen, finishes school, becomes self-supporting, marries, or becomes twenty-one, the monthly payments are to be reduced $20. When each of the two younger children finishes school, becomes self-supporting, marries, or becomes twenty-one, the monthly payments are to be further reduced $40. The court costs, including $200 to plaintiff's attorney, were taxed to defendant.

Under the decree defendant was to have fourteen $50 war bonds, his 1931 Pontiac coupé, cash of $2,580 (there should be this amount left after payment of the $250), a small residence valued at $1,400 which rented for $15 per month, and his tools. Defendant withdrew their joint bank account of

$3,527 shortly after the separation. What became of about $700 of this does not satisfactorily appear.

Defendant, age forty, is a skilled mechanic who earned about $300 per month during the six months preceding the trial. For about twenty-one months, commencing in the summer of 1942, defendant was paid about $600 per month for "war work" in California and at Pearl Harbor. When they were married in 1927, the parties had no property. The real estate, war bonds, and bank account which were accumulated were held in their joint names. For seven months preceding the trial plaintiff worked as a cook in an Army hospital at Fort Des Moines at $20 to $25 per week. Her earnings were used to help support the family.

Several matters are to be considered in awarding alimony to a wife who is granted a divorce. Among them are the needs of the wife, the husband's ability to pay, the age, health, and future prospects of the parties, the contributions of each to the joint accumulations, the children involved and to be provided for, the earning capacity of each party, the duration of the marriage, and the conduct of the parties. Any other facts should be considered which assist the court in reaching a just and equitable decision. Ellsworth v. Ellsworth, 218 Iowa 957, 256 N. W. 690, and cases cited; Schneckloth v. Schneckloth, supra, 209 Iowa 496, 502, 228 N. W. 290; 27 C. J. S. 949, 950–952, section 233a. See, also, Dillavou v. Dillavou, 235 Iowa 634, 638, 17 N. W. 2d 393, 395. We find no basis for interfering with the award made here.—Affirmed.

All JUSTICES concur.