PATRICIA P. LAMP, appellant, v. ARTHUR E. LAMP, appellee.

No. 47948.

(Reported in 60 N.W.2d 844)

NOVEMBER 17, 1953.

Charles B. Kaufmann, of Davenport, for appellant.

Sloan Hutchinson, of Davenport, for appellee.

WENNERSTRUM, J.—Plaintiff brought an action for divorce wherein she charged the defendant with cruel and inhuman treatment. He filed a cross-petition for divorce and charged the plaintiff with habitual drunkenness. The trial court dismissed both petitions on their merits. The plaintiff, the wife, has appealed from this decision. The defendant has not appealed. The plaintiff has presented to this court a brief and argument but none has been presented by or on behalf of the defendant.

The parties to this action were originally married March 27, 1930. A son was thereafter born who is now of age, married and is employed under his father in a plant where the father is a foreman. In March 1947 the plaintiff secured a divorce from her husband. However, on July 26, 1948, they were remarried in Chicago.

The appellant in her petition alleges that her husband since the remarriage has been guilty of such cruel and inhuman treatment as to endanger her life and she sets out the details of several occasions when he·struck and bruised her. She further alleges the defendant has an ungovernable temper and on various occasions has cursed and referred to her in a vile, profane and indecent manner. She asks that she be awarded the sole and absolute ownership of a residence property in Davenport, Iowa, owned jointly by the parties herein, that she be given absolute ownership of the furniture and furnishing in the home and that the appellee be divested of any right, title or claim therein. She also asks temporary and permanent alimony in the sum of $50 per week and that the appellee be enjoined and restrained from coming into the home and in any manner molesting her. An order was thereafter entered by the district court which restrained the appellee from entering the family residence and from in any manner molesting appellant.

The appellee thereafter filed an amended and substituted answer wherein he denied the allegations of the appellant's petition and particularly denied he had ever mistreated his wife. He also denied he used intoxicating liquors to excess or that he squandered his money drinking in taverns and that he did not use profane and indecent language in referring to appellant as alleged in her petition. He asks that her petition be denied. The appellee in his cross-petition asserted his wife has become a habitual drunkard especially during the year immediately past and asked that he be granted an absolute divorce from her. Subsequent and necessary pleadings were thereafter filed in which the respective parties controverted the pleadings of each other.

At the time of the remarriage the wife was working as a cashier and comptroller in a super market in Davenport. In her testimony she related several incidents when the appellee had

come home drunk, pulled down the blinds and then proceeded to strike and abuse her. On one of these occasions she alleges he fractured her nose and at another time she claims he broke several of her ribs. She originally advised the doctor whom she consulted that her injuries were received by reason of the lifting of some cans where she was employed but later informed him what she claimed was the true situation. Apparently this doctor bill was paid by an insurance carrier for her employer. At least appellant states she never received a bill for this service.

It is also appellant's contention, as shown by her testimony, that when she was working at the super market she purchased the family groceries out of her salary and also bought her own clothing as well as gas and oil for the family automobile. She also asserts the appellee never gave her any money and during the latter period of the second marriage he in no way contributed to her support and the purchase of any wearing apparel for her. All these allegations are denied by the husband.

The record shows the appellant's mother passed away in October 1949, and she and her brother and sister inherited a residence property in Davenport which later was purchased by the parties to this action. Title was taken in the name of both of them. A valuation of $10,500 was placed on the property by the three children and the appellant's share thereof was $3500. As a means of purchasing this residence property the parties herein secured a loan on it for $7500 and from some cash remaining after payment of $3500 to each of the other two heirs, the remaining proceeds of the loan was applied on improvements to the property and on obligations of both of the parties. She contends there are payments of $59.50 due each month on the house, the monthly cost for gas and lights is approximately $16, her needs for food will amount to $35 a month, the cost for her phone would be $3.52 and there are furniture payments due of $36.74 each month and payments due on a television purchased of $15.77 per month, as well as several other lesser indebtednesses.

In connection with the claim of the husband that the wife was a habitual drunkard there are only three occasions shown where it could be claimed the wife used intoxicating liquors other than as testified to by the husband. In the first of these instances

the appellant and appellee were visiting one evening where the appellee was assisting in the installation of some wiring. Mrs. Montgomery, in whose home they were at that time, testified for the appellant and stated: "* * * Mrs. Lamp did take a couple of beers, but she is not a drinking woman. I haven't seen her that way. * * * Q. You wouldn't say she was so intoxicated she had to stay? A. Oh no. No, sir." And relative to the attitude of the appellee toward his wife on this occasion, Mrs. Montgomery further testified: "* * * He said 'Wait till I get you home.' That is the reason I made her stay with me overnight. I asked him also to stay, but he didn't want to stay." Concerning this occasion the appellee, in testifying on his own behalf, stated that about midnight at the request of Mrs. Montgomery he and Mr. Montgomery went to Rock Island and brought back liquor which was consumed by all of the parties present. The second time was when the parties herein were having a Thanksgiving dinner. On this occasion there were also present appellee's mother and the parties' son and daughter-in-law. The appellee admitted he had brought a case of beer home for this occasion. Concerning the events of this day the appellee testified his wife became fairly well intoxicated and had difficulty in preparing the meal. Mrs. Wilhelmine Lamp, appellee's mother, testified, relative to the appellant on this day, as follows: "* * * On Thanksgiving Day she was just tense and not saying hardly anything. * * *." On cross-examination she testified: "* * * I * * * was so interested in my grandchild that I didn't pay any attention as to who drank beer that day at all. * * *." The mother-in-law also testified that on another occasion the appellant came to her house under the influence of liquor and wanted to stay there but was refused and advised to go back home. The appellant then called a cab and left. There was no confirming testimony relative to this incident and the claimed intoxication. The appellant, however, did admit she had gone to her mother-in-law's home on the occasion in question and testified she went there after her husband had hit her in the face and had locked her out. She also testified the mother-in-law stated she did not have any room and her remarks were to the effect she did not want to get involved in the family troubles. On the other hand, it is shown on many occasions the husband admitted he brought beer by the case to the home as well as other

intoxicating liquors. We have not set out all the testimony presented by the respective parties. However, as necessity requires we shall comment on other phases of the testimony.

The appellee on cross-examination testified: "My wife was always home evenings. Our real difficulties arose on February 1, 1951, when I stopped giving my wife money. I handled all the money from November 1, 1951 on. I bought no clothing for my wife since July 1, 1950. I gave her no money for her personal use. I am getting $398 a month. My wife wasn't extravagant. She helped bring in the money and worked regularly. She bought the groceries, gave me some money. * * * I have called my wife names. I have called her a drunken bitch, a drunken slut, and other names of a similar nature during the last five or six months." In his direct testimony he stated: "In November I slapped my wife. She called me a name when she was just sitting in a chair doing nothing and in an intoxicated condition." On cross-examination relative to this last referred to incident he testified: "In November 1950 I slapped my wife, but I did not slap her hard enough to bruise her. She was sitting in the chair doing nothing." He also testified he never saw his wife bring any beer or other intoxicating liquor into the house. And at the conclusion of his testimony he stated, "Yes, I have called her names during the last two months."

The trial court in its findings of fact and conclusions of law found the husband in his testimony admitted he had slapped the plaintiff, as heretofore set out, only as a result of vile names she used which were directed towards him. Our review of the testimony presented by both parties does not substantiate this second portion of the holding of the trial court. At least there is no corroboration of this claim. The court particularly held the appellee's testimony that his wife was a habitual drunkard is not convincing in the light of the fact he frequently brought beer into their home, nor is it sufficiently corroborated by the testimony of the appellee's mother. It also held there was likewise an insufficient corroboration on the part of the contentions and the testimony of the appellant. In dismissing both the appellant's petition and the appellee's cross-petition it held there was insufficient believable corroboration to substantiate the testimony of either of the parties and consequently dismissed their respective

petitions. From our review of the record it is our conclusion the trial court was in error in dismissing appellant's petition.

I. Corroboration of a complaining party's testimony in a divorce action is a statutory requirement. Section 598.7, 1950 Code. Necessary corroboration may be had from a defendant's own testimony. Brannen v. Brannen, 237 Iowa 188, 192, 21 N.W.2d 459; 17 Am. Jur., Divorce and Separation, section 386, page 339. In 27 C.J.S., Divorce, section 136, page 734, it is held the testimony of a complaining party may be corroborated by the defendant by reason of admissions or confessions in the absence of collusion. In annotations 65 A.L.R. 169, at page 176, it is stated:

"Where it is provided by statute, in effect, merely that a divorce shall not be granted upon the uncorroborated testimony or admissions of one of the parties, the testimony or admissions of the defendant have the weight and effect in corroboration to which the circumstances entitle them."

Iowa cases in which we have held admissions made by a party during trial may be considered for corroborative purposes are: McClurg v. McClurg, 207 Iowa 271, 272, 222 N.W. 862; Roach v. Roach, 213 Iowa 314, 322, 237 N.W. 439; Courtney v. Courtney, 214 Iowa 721, 725, 243 N.W. 510. In the present contested case there appears to us to be no collusion in an effort to provide and supplement other corroborative evidence and we hold the appellee's admissions in his testimony are entitled to consideration for the purposes claimed for them.

II. The appellant has testified to repeated personal attacks made on her by appellee and his frequent references to her morality. It is difficult for each occurrence of this character to be corroborated. Our opinions and holdings do not require each incident to be substantiated. We held in Courtney v. Courtney, 214 Iowa 721, 724, 243 N.W. 510, 512:

"The appellant contends that the testimony of the appellee is not corroborated, within the meaning of the aforesaid quoted Section 10474, Codes 1927 and 1931. [Section 598.7, 1950 Code] The requirement of this section is met when there is evidence other than that of complainant, either direct or circumstantial, tending to establish the ground charged for obtaining the divorce. It is not necessary that the corroborating evidence

be sufficient to sustain the decree; nor is it essential that the complainant's testimony be corroborated at every point, or that it touch every element or ingredient of the marital offense alleged in the petition. See Leonard v. Leonard, 174 Iowa 734; Hines v. Hines, 192 Iowa 569; Shors v. Shors, 133 Iowa 22."

See also Brannen v. Brannen, 237 Iowa 188, 192, 21 N.W.2d 459, and cases cited; Klepper v. Klepper, 234 Iowa 1138, 1142, 15 N.W.2d 213; Davis v. Davis, 228 Iowa 764, 768, 292 N.W. 804.

In the instant case, besides the admissions of the appellee in his testimony, there is evidence the appellant consulted a doctor relative to her broken ribs. This can and should be considered as corroborative evidence despite the fact she told conflicting stories to the doctor. There is also testimony of appellant's sister concerning a telephone conversation where she could hear appellee make abusive remarks to and concerning his wife. We hold there was sufficient corroboration in support of appellant's testimony.

In addition to the foregoing there was evidence, to which objection was not interposed, of other witnesses who testified to statements made by the appellant relative to what she had said to them concerning appellee's conduct toward her and his beating of her. This evidence is unquestionably of a hearsay and self-serving nature. However, in Walker v. City of Clinton, 244 Iowa 1099, 1111, 59 N.W.2d 785, 791, with cited authorities, we held evidence which would be objectionable and incompetent when properly objected to would support an issue when admitted without objection.

III. It is our considered conclusion there is ample evidence to justify a holding that the appellee has been guilty of such cruel and inhuman treatment as to endanger appellant's life. By stipulation of the parties a letter was admitted in evidence from a doctor who therein stated the appellant was at the time of the writing of the letter "not able to do any but the lightest work." The references to the appellant's moral character and the husband's profane and derogatory comments toward her are bound to have a harmful effect on her and should not be condoned. In commenting upon a situation somewhat similar to the instant case this court held in Shook v. Shook, 114 Iowa 592,

597, 87 N.W. 680, 681: "But she was a woman, not shown to have been hardened to endure insult and neglect, nor to have been without the sensibilities peculiar to her sex. That such treatment would have a strong tendency to break down the nervous system and permanently impair the health of the average woman cannot, we think, be doubted."

Then, too, there is evidence of a scar on the forehead of the appellant which she claims was caused by her husband. She testified that in July 1950 he threw an aluminum kettle partly filled with gravy at her which struck her forehead, causing the scar. The husband denied he caused this injury and seeks to explain the scar by stating she received it about the middle of September 1950, and suggested in his testimony: "* * * She must have been doing some washing and tried to empty the washtub downstairs and in her intoxicated condition the tub must have got away from her. She fell against the other tub and that's where she got that injury on her head. * * *." It is true there is no direct corroboration of the appellant's story of the cause of the scar. But this evidence of the injury is a circumstance that can be given due consideration, particularly in the light of his admissions he had struck his wife on other occasions. This is particularly true in the light of his rather incredible explanation of how it might have been caused.

IV. By reason of the fact we are convinced the trial court must be reversed and a decree of divorce entered in favor of the appellant, we must give consideration to the disposition of the property involved, the allowance of possible alimony payments and the payment of appellant's attorney fees and court costs.

It is shown by records presented at the trial that for the four months immediately prior to the hearing in April 1951 the appellee's take-home pay per month was approximately $270. This approximate amount remained from his wages of about $390 per month after deduction for group insurance, old-age benefits, withholding tax, Credit Union payments and $1.00 to donations on alternate months. There is evidence he earned, in 1950, $4305 as a foreman. At the time of the trial he was indebted to the Credit Union in the approximate amount of $800 and had $523 on deposit. There is also evidence of reasonably small obligations owed by both parties.

We have concluded the residence property should be decreed to the appellant, as well as the furniture therein. A third of the value of the real estate was inherited by her. It is our further conclusion the appellee can and should pay into the office of the clerk of the district court the first and sixteenth of each month the sum of $75, of which amount there shall be paid to the appellant the sum of $60 semimonthly or until she may remarry. The remainder of the amount ordered to be paid shall be first applied on court costs in the district court and this court and after their payment the balance shall be applied on attorney fees in favor of appellant's attorney. The sum of $200 is allowed appellant's counsel for services in the district court and $250 for services in this court. The appellee is given title to the automobile owned by the parties herein. At such time as it is shown the court costs and attorney fees have been paid, the semimonthly payments to the clerk of the district court shall be reduced to $60 each, which amounts shall be paid to the appellant as heretofore provided.

This cause is reversed for decree and judgment in keeping with this opinion.—Reversed and remanded.

HAYS, C. J., and BLISS, GARFIELD, MULRONEY, SMITH, THOMPSON, and LARSON, JJ., concur.

OLIVER, J., dissents.

OLIVER, J. (dissenting)—I respectfully dissent.

The majority opinion implies the decision of the trial court was based solely upon a finding of insufficient believable corroboration. However, the judgment states, in part:

"The court is convinced that both the plaintiff and defendant have failed to establish the grounds for divorce as alleged, and especially with respect to the issues that his or her health was impaired and his or her life was thereby endangered by cruelty or inhuman treatment of the other such as to endanger the other's life or that there was a reasonable apprehension that either the life of the plaintiff or the defendant would be endangered by cohabitation with the other party, primarily because the testimony of both the plaintiff and defendant is unconvincing."

The printed record leaves one in doubt as to the facts. The trial court saw and heard the witnesses. I would follow its findings and affirm the judgment.