LAVON EDNA MILKS, Appellee, v. RAYBURN LAVERN MILKS, Appellant.

No. 47026.

July 29, 1947.

Everett H. Scott and Charles J. Pickett, both of Waterloo, for appellant.

Yessler & Fahey, of Cedar Rapids, for appellee.

Hays, J.—Plaintiff alleges as ground for divorce that "the defendant * * * has been guilty of such cruel and inhuman treatment towards this plaintiff as to impair her health and endanger her life in that the defendant has drank to excess and while under the influence of intoxicating liquor has threatened this plaintiff with physical violence and this plaintiff feels that * * * great bodily injury may result therefrom." The defendant specifically denies the same and asks that plaintiff's petition be dismissed. From a decree granting plaintiff a divorce the defendant appeals.

The sole proposition urged as a basis for reversal is that the appellee asked for a divorce under section 598.8, paragraph

5, Code, 1946, and failed to prove the appellant had been guilty of cruel and inhuman treatment and also failed to prove that her life had been endangered. This proposition raises two questions: (1) the treatment and (2) the effect thereof.

The right in any individual to apply for or obtain a divorce is not a natural one but is accorded only by reason of legislative enactment. Only the legislature may prescribe the grounds upon which a divorce may be procured. Whether in prescribing those grounds the legislature has acted wisely is of no concern to the courts. Their duty is to enforce the law as it is found to be. Tipton v. Tipton, 169 Iowa 182, 151 N. W. 90, Ann. Cas. 1916C, 360.

The legislative enactments governing divorces in this state are found in chapter 598, Code, 1946. Section 598.8 provides:

"Divorces * * * may be decreed against the husband for the following causes. * * * 4. When, after marriage, he becomes addicted to habitual drunkenness. 5. When he is guilty of such inhuman treatment as to endanger the life of his wife."

These grounds are distinctly separate and require entirely different proof.

It should be noted that "habitual drunkenness," in itself, is not a ground for divorce. Only where, "after marriage," he becomes so addicted, has the legislature recognized it as such. It should also be noted that plaintiff alleges as a ground only paragraph 5, section 598.8.

This statutory ground for a divorce has been before this court innumerable times for interpretation. In the early case of Beebe v. Beebe, 10 Iowa 133, 135, this court said:

"As a specific cause of divorce this clause [such inhuman treatment as endangers life] is the definition of that degree of cruelty which in this State entitles a party to a divorce. * * * Where adultery, wilful desertion, or a conviction of felony is charged, the party asks a divorce, not because of some threatened injury, but on account of something done by the guilty party * * * In the case of cruelty under our statute, the treatment received is not of itself a cause of divorce, and becomes material

only as showing a just foundation for the apprehended danger to life."

See, also, Freerking v. Freerking, 19 Iowa 34; Sackrider v. Sackrider, 60 Iowa 397, 14 N. W. 736; Felkner v. Felkner, 153 Iowa 56, 133 N. W. 341; Hill v. Hill, 201 Iowa 864, 208 N. W. 377; Weatherill v. Weatherill, 238 Iowa 169, 25 N. W. 2d 336; and Zuerrer v. Zuerrer, 238 Iowa 402, 27 N. W. 2d 260. However, life may be endangered by treatment other than physical violence. Coulter v. Coulter, 204 Iowa 575, 215 N. W. 619; Lewis v. Lewis, 235 Iowa 693, 17 N. W. 2d 407.

█ Inhuman treatment contemplated by the statute is any course of " 'conduct * * * as endangers, either apparently or in fact, the physical safety or health of the other, to a degree rendering it physically or mentally impracticable for the endangered party to discharge properly the duties imposed by the marriage.' " Wheeler v. Wheeler, 53 Iowa 511, 513, 5 N. W. 689, 690, 36 Am. Rep. 240, quoting from 1 Bishop, Marriage and Divorce, Fifth Ed., section 717. In Goecker v. Goecker, 227 Iowa 697, 702, 288 N. W. 884, 886, we said:

"In the absence of physical violence, cruel and inhuman treatment, to justify a divorce, must not only endanger the health but must also be such as to ultimately endanger the life of the complaining party."

The record discloses that appellant and appellee were married in 1940. It is an undisputed fact that appellant was a heavy drinker at the time of his marriage, which fact was known to appellee. There is no dispute on the question of appellant's being a drinker at the time of this action. There is some dispute as to the degree thereof. Appellee asserts and appellant, in substance, admits that about every Friday evening he indulged in drink. There is nothing in the record which shows the usual conduct of a drunk man except an unsteadiness on his feet. There was no disturbance away from home nor strife and argument at home. Edith M. Stone, the landlady of the parties for some months just prior to this suit, states that she had never heard loud talk or disturbances between them. Appellee, as a witness, stated:

"Q. How would he conduct himself when he came home on Friday nights intoxicated? Do you know what I mean? Don't you understand the question? What would be his attitude when he would come home intoxicated, what would he do? A. Sometimes he would be very nice and then again he would be angry at me. Q. Did he ever strike you? A. He has. Q. Was that when he would be intoxicated? A. Yes. Q. How often would he do that? A. Just if he would get really mad at me. Q. Where would he hit you and how would he hit you? * * * A. He would just slap me. A couple of times. Q. * * * Slap you with his fist or hand? A. With his hand. Q. Where would he hit you? A. On the face a couple of times. Q. Were you afraid of him? A. Yes."

On cross-examination, she testified:

"Q. Has he ever hit you with his fist? A. To double up his fist, no. * * * Q. Have you been in good health since you have moved to Cedar Rapids? A. Yes. There has been times I haven't felt good but I think that was more my nerves than anything else. Q. But generally you say you are in good health? A. Yes."

On redirect examination, she testified:

"Q. Mrs. Milks do you think there is a possibility of you and Mr. Milks going back together? A. No. Q. What effect, if any, did this drinking have on your health? A. I hated the drinking. Q. Did it make you nervous and upset you? A. Yes. Q. And you feel you just can't take any more of it, is that true? A. That's right."

Josephine Pettit, a witness for appellee, testified:

"Q. Have you noticed what effect this drinking has had on her? A. It has made her very nervous."

The above questions and answers constitute the entire record on the effect of appellant's conduct upon appellee. There is no corroboration as to appellant's striking appellee except the testimony of appellant, as follows:

"Q. Have you ever hit your wife? A. I never hit her. I have slapped her—not very hard. I was also sorry after I had done it."

The trial court in a statement of findings, in the decree, states:

" * * * that the undisputed testimony establishes that the plaintiff has great fear of the defendant when he is in an intoxicated condition and, further, by reason of the fact that the testimony shows without dispute that the defendant permitted himself to become intoxicated so frequently, the Court finds that the plaintiff has an almost constant fear for her safety. The Court further finds that the plaintiff is adamant in her position that she will not live with the defendant. In view of the foregoing findings and after observing the conduct of the parties on the witness stand it is the considered judgment of the Court that no good could possibly result and it might be that great harm would result if these parties should in the future be compelled to sustain toward each other the relationship of husband and wife."

▇▇ Assuming, as did the trial court and as claimed by appellee, that appellant's intoxication constituted inhuman treatment, still, under this record we fail to find sufficient evidence of "endangerment of the health and life of appellee." In Nelson v. Nelson, 208 Iowa 713, 715, 716, 225 N. W. 843, 844, the court says:

"The record is, in any event, barren of any evidence tending to show that appellee's life was endangered or his health appreciably impaired. He claims, at most, to have suffered somewhat from nervousness and loss of appetite and sleep. The showing at this point is insufficient."

The showing in the instant case is even less than in the cited case. This record at best shows nothing but that appellant is a heavy drinker and indulged in a weekly drunk; that appellee hated drink and was afraid. Of what she is afraid is not shown. Mere drunkenness, without more, does not constitute

sufficient ground for a divorce under section 598.8, paragraph 5, Code, 1946.

However, appellee contends that in view of the fact that the trial court's finding is based somewhat upon its observation of the parties, a benefit that this court does not have, the same should be given much weight. That this is the rule in Iowa does not require the citing of authority. It is also the rule that this court is not bound by the findings of the trial court and will reverse where firmly convinced that plaintiff has failed to establish ground for divorce alleged in petition. See Weatherill v. Weatherill, supra, 238 Iowa 169, 25 N. W. 2d 336.

There being no sufficient showing upon the part of appellee, the decree of the trial court should be and is reversed.—Reversed.

OLIVER, C. J., and GARFIELD, HALE, BLISS, SMITH, MANTZ, and MULRONEY, JJ., concur.