Dana R. Walker, Appellee, v. James S. Walker, Appellant.

## No. 47242.

(Reported in 33 N. W. 2d 413)

August 2, 1948.

S. L. Harvey, of Des Moines, for appellant.

Carl A. Burkman, of Des Moines, for appellee.

Hale, J.— The record with which we are confronted does not comply with Rule 340, Rules of Civil Procedure, and

tends to confuse rather than simplify the proceedings in the district court. The same fault exists as is called to attention in Pfeffer v. Finn, 239 Iowa 24, 30 N. W. 2d 481. See, also, McManis v. Keokuk Savings Bk. & Tr. Co., 239 Iowa 1105, 33 N. W. 2d 410. The record in this case contains numerous duplications. While we would be justified in ignoring a record on appeal presented in disregard of the rules, we shall not do so at this time so that we may dispose of the case as promptly as possible. But for the failure to comply with the rule as stated, the cost of printing the record in this case is taxed to defendant.

In this case the wife, plaintiff, seeks a divorce from the defendant husband. There are really only two questions involved—the insufficiency of the evidence, and the corroboration. The question of condonation is referred to in argument, but since it was not pleaded it can only be considered in connection with other evidence as tending to explain the seriousness of the conduct of defendant as viewed by the plaintiff. Nelson v. Nelson, 208 Iowa 713, 716, 225 N. W. 843.

The parties to this action were married in Illinois, June 4, 1926, soon moved to Kansas, and in 1930 moved to Des Moines where they have since resided. They have acquired a home in Des Moines valued by both at $12,000, with a mortgage to defendant's sister of about $5000 and some accumulated interest. There is one child, a daughter, about eighteen at the time of the trial. The defendant has been employed by an oil refining company as a traveling agent; his territory covering western Iowa. The plaintiff was also employed in the county auditor's office at $180 per month, which, together with her receipts as a national officer of a woman's auxiliary to a fraternal organization, made an aggregate of about $3000 a year. She had previously, in 1943, been employed in the assessor's office. The daughter, Patricia, was in college at the time of trial and was liberally provided with funds from her parents and her aunt. There is no complaint that the defendant did not properly provide for the family. Until about three months before the institution of the divorce suit defendant turned his pay check over to his wife and it was disbursed by her. The parties, at the time of the trial, had accumulated a joint savings account

of $2259 and about $900 in bonds. These bonds are claimed by plaintiff to have been taken by defendant, which charge he denies, but he did withdraw the savings account.

The testimony as to the differences between the parties need not and could not profitably be set out in full. It shows that neither party was without fault. Plaintiff's testimony attempts to cover the period of their marriage, but the statements as to differences in the early years concern only minor matters and are trivial. Most of the testimony is as to occurrences during the year and a half prior to the divorce.

I. If we rely upon plaintiff's testimony only it appears that most of the year and a half preceding the granting of divorce was a series of quarrels and abuse by the husband. A large part of the controversy could have been avoided by the exercise of some degree of forbearance and common sense. Various incidents are related, many of which are of little consequence except as to verbal disagreements. Complaint is made of conduct which has no relation to actual mistreatment, such as the blocking of the plaintiff's car by the husband about the time plaintiff was planning to leave to attend some social affair. Complaint is made of various instances of defendant actually using physical violence by striking the plaintiff, and one instance where the plaintiff claims that she was injured by the violent conduct of the husband and that the lower bone of the spinal column, the coccyx, was broken. The husband, however, denies that this injury was due to his violence; that there was a controversy in progress, but that the upsetting of the chair which caused the injury was only an accident. However that may be, there was no medical testimony. The doctor whom she claims she visited was not a witness, although there is no reason to believe that he was not available as such.

A disturbing element in the relation of the parties was the presence of plaintiff's parents, but it is conceded that these aged parents made their home with the parties at the invitation of the husband. While the conduct of the husband in relation to the parents might have been annoying, there is no showing that any actual misconduct arose out of the controversy in relation to the situation.

The series of quarrels was varied with reconciliations, and most of the testimony shows that these quarrels and disputes, while no doubt annoying and exasperating, did not amount to violent physical demonstrations. Of course, according to plaintiff's testimony, there was a number of instances where it would result in such, but what marks the conduct of the parties as unusual is the fact that they continued, up until near the time of the divorce, in what to outside people were apparently friendly relations. Plaintiff states that on Saturday, prior to the divorce hearing, the defendant took her out to dinner. It would seem, if not incredible, at least unusual, that the constant quarrels could all have been one-sided. The controversies sometimes extended to all hours, and yet, if we credit the testimony of the plaintiff, there is no mention that she herself participated in the disturbance.

The testimony of the plaintiff is not helped by her reference to a diary which apparently she began to keep as a record of the alleged mistreatment of her husband beginning at the time there was some discussion of a divorce in some of the arguments which they had. Charges so carefully prepared, apparently with the view of using them later on in the divorce proceedings, do not tend to strengthen our confidence in her story. The diary was offered in evidence and goes into the record under the equity rule, but there is no record as to whether its admissibility was passed upon or not. We have not considered it in evidence, but her story, apparently based on it, constitutes a part of the record of the testimony. Plaintiff's testimony, in some instances, consists of conclusions rather than fact propositions.

Without going further into the various charges made, some of which are quite serious in nature, an examination of the record fails to show that the conduct of the defendant was such as to endanger the life of the plaintiff. There is testimony which might indicate that the effect of the alleged misconduct caused her to be nervous, but nowhere does the plaintiff say that her life was endangered. Of course without establishing by proof that the defendant was guilty of cruel and inhuman conduct such as to endanger life, no divorce can be granted. Yetley v. Yetley, 196 Iowa 314, 194 N. W. 88; Gemricher v.

Gemricher, 230 Iowa 1212, 300 N. W. 517. See, also, Milks v. Milks, 238 Iowa 785, 28 N. W. 2d 472, and cases cited.

"Cruel and inhuman treatment that will justify a court in severing the bonds of matrimony must be of such a character as to not only impair the health but to endanger the life of the complaining party." White v. White, 200 Iowa 779, 781, 205 N. W. 305, 306, cited in 27 C. J. S. 547.

See, also, Siverson v. Siverson, 217 Iowa 1167, 251 N. W. 653, and cases cited. This has been the constant holding of our court.

"As the statute clearly states, it is not enough to prove the inhuman treatment. The wife must go further and establish that such treatment endangered her life." Weatherill v. Weatherill, 238 Iowa 169, 187, 25 N. W. 2d 336, 346, and cases cited.

II. We are also satisfied that there was no such corroboration as the statute requires. The daughter, Patricia, was a witness, but more in relation to the verbal controversies than other. She complains that she was struck once by her father and this is not denied by the defendant who admits he slapped her on one occasion but assigns as a reason that she was hysterical and that this brought her out of that condition. However, her testimony does not establish the facts necessary to inhuman treatment, nor the danger to life. That the home, during the latter part of the time she attended high school and on other occasions since, must, according to her testimony, have been unpleasant in many respects there is no doubt, but an examination of her testimony does not disclose conduct which could be inhuman and such as to endanger life.

We feel that the burden of proof was not sustained and that the corroboration was not sufficient. It is true that the conduct of neither party can be commended, and the explanation of the husband as to his conduct in taking the bank account, and his explanation of the appropriation of the funds which he alleged were used in expenses, are not satisfactory, but his actions in that respect do not constitute cruel and inhuman treatment. The acts of the husband, and it may be to some extent those of the wife, were reprehensible, but many of their

1060

controversies might have been avoided. However, it is not the province of the court to lay down rules of conduct in cases such as this, but to apply the statute in relation to divorce.

Some matters in relation to the mortgage held by defendant's sister, and threats of foreclosure, are not related to the questions in issue and need not be considered. Other questions raised by plaintiff are unnecessary to consider or discuss, in view of our holding herein.

While we are, in many cases, persuaded by the ruling of the trial court, yet under the record submitted in this case we feel that we are obliged to differ from the finding of the district court. We are satisfied that the case should be and it is reversed.—Reversed.

All JUSTICES concur.