NORMA LEVIS, appellee, v. MAX LEVIS, appellant.

No. 48032.

(Reported in 52 N.W.2d 509)

APRIL 1, 1952.

Willard F. Russell, of Toledo, and Haupert & Robertson, of Marshalltown, for appellant.

Roy. L. Pell and Joe B. Tye, both of Marshalltown, for appellee.

SMITH, J.—Plaintiff alleged inhuman treatment without stating particulars except some specific violence and threats urged as basis for a requested restraining order. Defendant denied generally without demanding more specific statement. The trial court found both physical and mental cruelty and granted a divorce. Defendant appeals.

The parties were married June 19, 1947. (The record quotes defendant as testifying "1946" but that seems to be an error.)

Plaintiff was sixteen years old, defendant twenty. They had known each other since the preceding September. Plaintiff's parents lived at Rhodes in Marshall County, defendant's in Marshalltown.

The young people had no home, no furniture and practically no money. After spending several days with her people they lived with his folks until November. They then moved into "a nice modern two-room upstairs apartment." Plaintiff promptly got a job detasseling corn and then worked in a filling station her husband was operating—"I did this to help him with the work and to be with him."

Their one child, Donna Jane, was born April 7, 1948. Thereafter they lived in several locations in Marshalltown. Plaintiff worked in various employments, her mother-in-law taking care of the baby. Defendant purchased the filling station in September (1947) but they "got rid" of it after the baby was born. Defendant worked awhile at State Center, later helped his brother build a house and then, with help of his brother and father, built a little house for himself and family near his parents' home.

In the meantime they lived a short time with plaintiff's folks at Rhodes and then back to defendant's parents. They moved into their own little new house probably in March 1950. Defendant had been in military service but had been honorably discharged at time of trial. He worked at various employments including a short time at the Government Arsenal at Rock Island. He describes himself as a carpenter apprentice or "rough carpenter" and testifies he drew as high as $1.35 (per hour)—"I have drawed $1.50 * * * when I worked for myself."

There is little conflict in the testimony as to the details we have hastily sketched. It is difficult to find just when trouble began to brew. Defendant objected to some of the jobs plaintiff had. He testifies she came home once sick and "said something about some gas regulators she was working on" that made her sick, "I asked her not to go back and she didn't."

The real origin of the trouble may be implied however from defendant's own further testimony:

"Her employment [at another place] was terminated because she wanted to work and I didn't want her to. I wanted her to stay at home and take care of the baby and she was always

talking about Clayton Hensley [a fellow worker] when she came home and the things he said all the time. He told dirty stories and she told me. * * * I didn't want her to work any place."

The trial court however was unable to find anything in the record to support defendant's suspicions of any wrong relationship between her and Hensley. We agree with the trial court in that respect. It is significant that defendant does not attempt to assert here any suspicious facts.

Nevertheless, in October 1950 defendant filed suit for divorce charging his wife with "running around with other men." That case never came to trial. One witness here, Marie Maas, testifies he told her he "caught" his wife "out along the road with another man"; that he "beat her up" and that she had him in jail. Defendant denies this conversation and makes no claim here that he ever found his wife in any compromising situation.

Plaintiff testifies he called her "whore" frequently. Her sister corroborates her as to one occasion when (according to the sister) he qualified the epithet with unprintable obscene and profane adjectives. Defendant denies he ever called her by that name. However, another sister of plaintiff says she heard him say what meant the same thing.

Plaintiff also testifies he wrongfully accused her, in the presence of her father, of having an abortion performed in Des Moines. The father corroborates her in this respect. Defendant says: "I told my father-in-law that Norma didn't want any children. That is about all that was said."

What seems to have been the final "straw" was an incident that occurred March 16, 1951. The details are unimportant. It is undisputed defendant that night, after an earlier quarrel, picked plaintiff up and threw her into his truck when she refused to go home with him, and then slapped her. This is one of two slapping occasions admitted by defendant. The suit was commenced March 21 thereafter.

There was constant quarreling between the parties and undoubtedly some physical violence at times on defendant's part. He minimizes these occasions and even plaintiff's own version of them does not show any very great physical injury.

Defendant attributes their marital troubles—or at least their

failure to compose them—to interference in their affairs by plaintiff's relatives. We find no substantial support in the record for this theory.

On appeal defendant urges two propositions: (1) Insufficiency of the evidence to establish such inhuman treatment as to entitle plaintiff to divorce; and (2) excessive allowance of attorney fees in view of defendant's financial condition.

I. We have frequently had occasion to remind ourselves that while divorce proceedings are triable in equity and consequently are reviewable de novo on appeal, we are governed by some limitations not present in ordinary equity appeals. See Robbins v. Robbins, 234 Iowa 650, 12 N.W.2d 564, and authorities there reviewed. While the granting of a divorce under our practice is not an administrative function and does not involve judicial discretion purely (Perry v. Perry, 199 Iowa 685, 689, 202 N.W. 572) it is still true, when the case has been tried on oral testimony, that "we are disposed to give serious consideration to the decision of the trial court in determining final disposition of the case" on appeal. Massie v. Massie, 202 Iowa 1311, 1312, 210 N.W. 431, 432. See Littleton v. Littleton, 233 Iowa 1020, 1024, 10 N.W.2d 57.

The reason for this rule is especially apparent in the instant case where the trial court, having the parties before him, was required to determine not only as to the credibility of witnesses but also whether mental cruelty such as is testified to here was such as would probably endanger plaintiff's health and life. Defendant argues:

"It is submitted that both parties are familiar with the immoderate language disclosed by the record or similar thereto and employ such in the expression of their ideas and opinions of each other and of other people and their familiarity therewith makes its use less shocking when used by them or in their presence than to persons to whom good fortune has created circumstances making less frequent the application of such manner of expression."

This seems to imply plaintiff was not one to be shocked and injured by defendant's charges against her and the language in which those charges were clothed. But the printed record does

not disclose any such insensitiveness. The trial court was in a position to observe it if it existed. There is no evidence plaintiff was "familiar with the immoderate language" except as she heard it from her husband. The trial court, with full opportunity to observe plaintiff and her demeanor throughout a two- or three-day trial, said:

"The court finds that the charge of infidelity of the plaintiff is unfounded and inhuman. The making of such charges against sensitive women has always been held to be capable of endangering the life of accused. In any event, the prospect of continuous quarreling through a married life over such charges falsely made is unbearable and is ground for divorce, and the court will so hold."

Had plaintiff revealed such callousness to the charges and to the language in which they were couched as to render them less inhuman and cruel to her, the trial court would have detected it. Neither the record nor the trial court brands her as such a person. We cannot do so.

True, there is some indication plaintiff and her family were uneducated. But since when is moral sensibility measured by education? Even acquaintance with the coarse language in which the charges were stated would not imply indifference to them when directed against herself. Plaintiff's own testimony discloses an essential decency and fairness of character which has no relation to education, when she says as to one occasion: "After that I went to the home of my parents but I returned to our home the following Sunday night because I figured I had been as wrong as he had."

II. The case is essentially one of fact. Manifestly precedents are of little value. Klepper v. Klepper, 234 Iowa 1138, 1142, 15 N.W.2d 213; Littleton v. Littleton, supra. We have not set out in detail the evidence of physical violence which accompanied the unfair charges of unfaithfulness. The trial court says:

"This violence was not of a particularly brutal character, and in itself would not threaten the life of the plaintiff by such blows inflicted. But the acts of violence shown in the record disclose such disregard for the person of the plaintiff and indiffer-

ence for her safety as well might upset the nerves of a wife of ordinary sensibilities and so endanger her life."

There is testimony that because of defendant's treatment of her she was nervous, unable "to eat, sleep, think or anything else" and that she was losing weight after September 1950.

This court is committed to the proposition that "life may be endangered by treatment though it involves no physical violence." Coulter v. Coulter, 204 Iowa 575, 577, 215 N.W. 619, and authorities cited, and that corroboration is not necessary as to every detail of plaintiff's testimony. Klepper v. Klepper, supra.

The manner in which the testimony of various events was introduced, or at least in the way it is presented here, renders any orderly or coherent statement of time and place of the several acts of violence quite impossible. Perhaps such statement would add little to the value of the opinion. After all, the false charges and indecent epithets and language constitute the essential ground of the trial court's decision.

Acts of violence added to the mental cruelty more than they constituted present threat to plaintiff's health and life. As described by plaintiff: "When he slapped me in the face, it hurt some but he didn't hurt me as bad on the outside as on the inside." Again speaking of an occasion when, according to witnesses, he struck her in the chest with his fist, she says: "When he hit me it smarted and burned, particularly on the outside. What hurt me was on the inside most. I mean by that I thought I had married a man and I didn't think he would strike me and hurt me."

Defendant relies heavily here on Hall v. Hall, 162 Iowa 653, 144 N.W. 320, and Walker v. Walker, 239 Iowa 1055, 33 N.W.2d 413. In each we disagreed with and reversed the trial court which granted divorce. Naturally some general language in the opinions is pertinent to defendant's theory here but we cannot concede its applicability to this record.

Plaintiff opposes these and other of defendant's citations with Worthington v. Worthington, 238 Iowa 1044, 29 N.W. 2d 186, and other decisions of this court. But the law in cases of this kind is well-settled. Numerous citations of authority are not

necessary. We have no difficulty in holding the conduct of defendant shown here sufficient to justify divorce.

III. The trial court ordered costs to be taxed against defendant "including the sum of $425 for plaintiff's attorneys." Defendant objects to the amount allowed for attorney fees, stating there had already been a prior payment of $125.

The only testimony we have as to the value of the services is that of the attorney himself. The opinion of the trial court seems to have coincided with that of the attorney. Defendant testified as to his own earning power. At the time the suit was filed he was earning, on an average, practically $200 per month—$96 every two weeks.

The court awarded plaintiff the custody of the minor child—of which order there is no complaint here—and rendered judgment against defendant and in her favor for $15 per month from July 1 through December 1, 1951, and thereafter, commencing January 1, 1952, the further sum of $40 per month continuing until the child attains majority or sooner becomes self-supporting. These allowances are not appealed from. No alimony was decreed and the title to the home was confirmed in defendant free from any claims of plaintiff.

Plaintiff's attorney testified to practically four days of court service in addition to time spent out of court in preparation for trial. We are not prepared to hold the allowance of attorney fees was excessive.

IV. The parties spent some time together after suit was commenced, including a trip to Traer to consult an attorney there as to a proposed trust fund for the baby. (The trust fund never materialized.) From there they drove to Newton where they spent the night apparently discussing possible solution of their marital troubles. The discussion came to nought.

There is no plea here of condonation (Nelson v. Nelson, 208 Iowa 713, 716, 225 N.W. 843), but evidence of the trip was nevertheless admissible. Walker v. Walker, 239 Iowa 1055, 1056, 33 N.W.2d 413. We have considered it, together with the abortive effort made at the trial to effect a reconciliation, as bearing on plaintiff's view of the conduct of defendant of which she complains. Walker v. Walker, supra.

We are of opinion that on the whole record the decree of

the trial court must be affirmed. The attitude of defendant under unfriendly cross-examination as to possible reconciliation seems to bear out the trial court's characterization of him as "a very stubborn man." Possibly a more understanding treatment of him at that psychological moment when he was proposing resumption of marital relations might have had a more favorable result.

However that is speculation only. The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.