CHARLES R. FISHER, appellant, v. ESTELLA FISHER, appellee.

No. 48057.

(Reported in 53 N.W.2d 762)

JUNE 10, 1952.

Life & Davis, of Oskaloosa, for appellant.

Bray, Carson & McCoy, of Oskaloosa, for appellee.

GARFIELD, J.—Plaintiff Charles R. Fisher married Estella Oswandel June 20, 1936. In March 1949 they separated and plaintiff petitioned for divorce on the ground of "such inhuman treatment as to endanger" his life. See sections 598.8(5), 598.9, Codes, 1946, 1950. Following trial June 1, 1951, the district court held plaintiff had failed to show his life was endangered by defendant's treatment and denied relief. Plaintiff appeals.

Plaintiff, seventy-six at time of trial, had been married

twice before. Each marriage ended in the wife's death. Defendant, seventy-one at time of trial, had one previous marriage which ended in the husband's death. At the time of their marriage defendant, with plaintiff's consent, deeded her farm to her son and daughter. Plaintiff owned three small residences in Des Moines and one in Knoxville. Until 1946 plaintiff worked in a coal mine near Des Moines during the winters. At other times he worked at various tasks and lived with defendant near Oskaloosa in one of two residences on the farm she formerly owned. He also spent week ends there while working in the mine.

Plaintiff testifies defendant continuously refused to have sexual relations with him soon after the marriage. Defendant denies this and says plaintiff became impotent three or four years after the marriage. Plaintiff testifies he tried to get defendant to live with him in one of his Des Moines residences but she refused and that she also refused to live with him in Oskaloosa. Defendant also denies this. Plaintiff testifies defendant frequently called him profane and obscene names reflecting on his mother and his legitimacy. This is corroborated by a Mr. Davies and a lady who worked in the Fisher home during the spring of 1938 but was discharged by defendant. Davies had little contact with the Fishers after 1938. He corroborates some other testimony of plaintiff.

Defendant denies she ever called plaintiff names or spoke unkindly to or about him. Four of defendant's relatives and four other acquaintances not related to defendant say they heard no names called and observed no unkind treatment by defendant. Plaintiff also testifies defendant denied him use of the bathroom, was unduly critical of his manners and the way he ate his food, subjected him to ridicule, was unkind and domineering toward him, sometimes in the presence of others. There is also testimony defendant said she was through with plaintiff and was going to get rid of him. Defendant denies all this.

The only evidence of physical violence is plaintiff's statement that defendant kicked him, once in the privates, when he "made advances toward her." Once in an argument, after plaintiff asked to drive defendant's automobile on a business mission on a cold night, plaintiff says she threatened to get a gun and blow his "G—— d—— brains out." It is not claimed she made

any move to carry out the threat. Defendant also denies this testimony.

When plaintiff left defendant's home in March 1949, he testifies she ordered him to take his clothes and leave within five days. He says he told her "that sounds like music to me." Defendant's version is that plaintiff said he was dissatisfied and left of his own volition. The parties have not lived together since that time.

A matter we think had much to do with the separation is a lawsuit brought against plaintiff by the father of defendant's daughter-in-law to collect a note for $700 signed by plaintiff and defendant as the balance of the purchase price of an automobile registered in defendant's name. Plaintiff had paid $1400 on the car and the note was given for the balance. The note was acquired by the man who brought suit on it and defendant seems to have insisted plaintiff pay it. Judgment was entered against plaintiff on the note. He apparently felt defendant should have paid it.

Plaintiff testifies defendant's treatment of him humiliated him, he could not sleep or eat, his nerves were upset, he gained twenty pounds since the separation. He says he felt his life was in danger when defendant threatened to use a gun on him and he lay awake two nights at that time. The former domestic says defendant's calling plaintiff names "seemed to bother him at times." Mr. Davies expressed the opinion, over objection by defendant's counsel, that defendant's treatment of plaintiff caused him to be exceptionally nervous and was very detrimental to his health.

The above is a sufficient statement of plaintiff's case although of course it omits some details in nearly two hundred pages of testimony. Little more need be said of the evidence for defendant. As we have indicated, she denies substantially all plaintiff's accusations. In the main her witnesses testify they observed nothing improper in defendant's treatment of plaintiff.

There is much testimony concerning the devoted care defendant gave plaintiff when he had blood poisoning in 1948. Several witnesses say plaintiff credited defendant with saving his life; praised her treatment of him and called her one of the best women in the world. Plaintiff admits part of this evidence and

does not deny defendant's testimony that when they separated plaintiff told her she was the best woman who ever lived, put his arm around her and kissed her.

. There is also evidence the parties had many good times. During the winter months they made three trips to California and went to Texas twice. In the summer they made fishing trips to Minnesota. None of defendant's witnesses finds serious fault with plaintiff. All seem to concede he is kind, industrious and rather quiet.

■ The briefs are largely devoted to the question whether defendant's treatment of plaintiff was such as to endanger his life. Of course the inhuman treatment that is a cause for divorce must endanger life. Code section 598.8(5) so provides and we have so held a great many times. See for example Walker v. Walker, 239 Iowa 1055, 1058, 1059, 33 N.W.2d 413, 415, and citations; Zuerrer v. Zuerrer, 238 Iowa 402, 405, 27 N.W.2d 260, 261; Brannen v. Brannen, 237 Iowa 188, 191, 21 N.W.2d 459, 461.

It is also well settled that there may be inhuman treatment which endangers life without physical violence. Impairment of health through treatment other, than physical violence may be such as to endanger life. See Zuerrer and Brannen cases, supra; also Levis v. Levis, 243 Iowa 574, 580, 52 N.W.2d 509, 512; Doyle v. Doyle, 241 Iowa 1185, 1187, 44 N.W.2d 761, 762; Milks v. Milks, 238 Iowa 785 , 788, 28 N.W.2d 472, 473 ; Schnor v. Schnor, 235 Iowa 720, 722, 17 N.W.2d 375, 376, 157 A. L. R. 628, 630.

Littleton v. Littleton, 233 Iowa 1020, 1024, 10 N.W.2d 57, 59, states : "Mistreatment * * * which deprives a person of needed rest and peace of mind, may so affect his nervous system and bodily functions as to undermine his health and thereby endanger his life as effectively as blows or bodily abuse, whether the victim be a man or a woman."

The prevailing view in other jurisdictions is that inhuman treatment may afford ground for divorce although there is no physical violence. See 17 Am. Jur., Divorce and Separation, section 53, page 178; 27 C. J. S., Divorce, section 28a.

■ There is nothing in the record to support plaintiff's argument that the trial court misconceived the law upon this question as we have stated it. However, the court found, as we have said, plaintiff failed to establish his life was endangered

by defendant's treatment of him. Of course the burden rested upon plaintiff to prove his case by a preponderance of the evidence. Massie v. Massie, 202 Iowa 1311, 1312, 210 N.W. 431.

We have repeatedly held that although a divorce case is triable de novo here the trial court's findings are entitled to much weight. Doyle v. Doyle, supra, 241 Iowa 1185, 1187, 44 N.W.2d 761, 762; Brannen v. Brannen, supra, 237 Iowa 188, 189, 21 N.W.2d 459, 460; Neff v. Neff, 237 Iowa 69, 71, 20 N.W.2d 916, 917. See also Levis v. Levis, supra, 243 Iowa 574, 578, 52 N.W.2d 509, 511; Lewis v. Lewis, 235 Iowa 693, 701, 17 N.W.2d 407, 411.

When we give the trial court's findings the weight to which they are entitled, it is quite clear we should not grant plaintiff a divorce.

Several of plaintiff's charges of mistreatment rest upon his uncorroborated testimony which is denied by defendant. We cannot say they have been established by a preponderance of the evidence. There is no testimony that some of the treatment of which plaintiff complains had any ill effect upon his health. On the whole we think the conclusion is warranted that it has not been shown plaintiff's life was endangered by inhuman treatment.

We have said precedents are of little value in divorce cases because the facts in each are different. Klepper v. Klepper, 234 Iowa 1138, 1142, 15 N.W.2d 213, 215; Littleton v. Littleton, supra, 233 Iowa 1020, 1024, 10 N.W.2d 57, 59; Massie v. Massie, supra, 202 Iowa 1311, 1312, 1313, 210 N.W. 431. See also Levis v. Levis, supra, 243 Iowa 574, 579, 52 N.W.2d 509, 511. However, these cases lend support to our decision: Walker v. Walker, supra, 239 Iowa 1055, 33 N.W.2d 413; Milks v. Milks, supra, 238 Iowa 785, 28 N.W.2d 472; Hill v. Hill, 201 Iowa 864, 208 N.W. 377; White v. White, 200 Iowa 779, 781, 205 N.W. 305, 306 ("* * * divorces cannot be granted for incompatibility, or because the parties * * * are unable to agree or to dwell together happily."); Yetley v. Yetley, 196 Iowa 314, 194 N.W. 88; Pfannebecker v. Pfannebecker, 133 Iowa 425, 436, 110 N.W. 618, 622, 119 Am. St. Rep. 608, 12 Ann. Cas. 543 ("The marriage yoke cannot be thrown off merely because it rides unevenly.").— Affirmed.

All JUSTICES concur.