MARJORY S. FRYE, appellant, v. REID FRYE, appellee.

No. 48383.

(Reported in 63 N.W.2d 242)

564

March 9, 1954.

Elton A. Johnston and William H. Miles, both of Corydon, for appellant.

Harry F. Garrett and Thomas S. Bown, both of Corydon, and Stuart & Stuart, of Chariton, for appellee.

Larson, J.—The parties were married in Princeton, Missouri, November 5, 1938, after a courtship of some two years. Defendant had been attending college at Ames, Iowa, and plaintiff operated a beauty parlor in Corydon, Iowa. No children were born to this union. They separated September 10, 1950. Plaintiff alleged as grounds for divorce "cruel and inhuman treatment to such a degree as to endanger her health and life", and

also "that the defendant became addicted to habitual drunkenness after their marriage." Defendant's answer denied these allegations as well as the good faith allegation in plaintiff's petition, and further alleged that the action was brought to protect one Amy Robertson from a contemplated suit against her by the defendant for alienation of the affections of the plaintiff. The trial court found "a few instances of cruelty and on this charge the plaintiff is corroborated by undisputed evidence", but said: "* * * in each instance the defendant had been drinking and his acts were plainly the result of his inebriety." The trial court further found "after the marriage he [the defendant] became addicted to the immoderate use of intoxicants", but, because plaintiff had on several occasions furnished liquor for the defendant, denied her petition for divorce. Plaintiff appeals.

The legislature prescribed the grounds upon which a divorce may be procured in this state. Section 598.8, Code of Iowa 1950, provides in part as follows:

"Divorces from the bonds of matrimony may be decreed against the husband for the following causes: * * *

"4. When, after marriage, he becomes addicted to habitual drunkenness.

"5. When he is guilty of such inhuman treatment as to endanger the life of his wife."

From the record we learn that at the time of their marriage defendant was 20 and plaintiff about 23 years of age. Plaintiff continued to live in her apartment with her father and defendant stayed with his parents on the farm but would come in and spend three nights a week with the plaintiff. This arrangement, desired by the defendant, continued until plaintiff's father left to be married some four years later in 1942. During this period of time the parties spent their social evenings with plaintiff's friends at the Green Circle Inn at Centerville. After 1942 such friends were entertained at their apartment in Corydon, Iowa. No liquor was in evidence at the apartment while plaintiff's father lived there, but when he left, the defendant brought liquor into the apartment. Shortly thereafter plaintiff obtained a liquor book and, on defendant's insistence, purchased a case

of liquor which she stored in her suitcase in the apartment. From this supply she served her social guests and also gave defendant a bottle now and then. Later in 1948 when she returned from a vacation trip she brought him a bottle of liquor from Mexico. The record discloses no other instances where she furnished defendant liquor, but these admitted acts by plaintiff appear to have induced the trial court's condemnation and refusal to grant plaintiff the relief she prayed.

The parties continued to live together, with some difficulty, from 1943 to 1950, and the defendant began spending only week ends in Corydon until he left for good. Plaintiff had no knowledge of defendant's use of intoxicants prior to the marriage, and she did not learn until after the marriage that defendant had been arrested for intoxication at school and was expelled.

I. Precedents are of little value in divorce cases because the facts differ in each case. Fisher v. Fisher, 243 Iowa 823, 53 N.W.2d 762, and cases cited therein. This matter is triable de novo before us, so we turn first to plaintiff's argument herein that the trial court misconceived the law upon the matter of habitual drunkenness as well as to the responsibility of one for his cruel and inhuman acts toward his spouse while under the influence of intoxicants.

It is true that one who marries another who is a habitual drunkard with knowledge of that fact assumes the risk, but on the other hand the fact that the complaining spouse may not have used his or her influence to restrain the drinking habit of the defending spouse and may have at times acquiesced or even participated therein does not necessarily bar him or her from the right to a divorce on the grounds of the other's habitual drunkenness. 17 Am. Jur., Divorce and Separation, section 134, page 219.

It is quite clear to us that the defendant remained sober while at the farm when away from his wife and then turned to drink and drunkenness when he came in to be with her over the week ends. Direct and corroborated testimony as to defendant's frequent intoxication abounds in the record and is undenied by defendant who himself said he got drunk. He said: "I got drunk when I was going to Ames up there and got arrested for

it. Quite a bit later I got to drinking a little more. * * * In 1946 and 1947. * * * I got drunk once in a while." The inference that the plaintiff was the drinking influence is refuted, we think, by this admission.

While defendant contends plaintiff failed to show that he became addicted to habitual drunkenness after marriage, we do not agree. Nevertheless it is important to determine what is meant by habitual drunkenness. In Bizer v. Bizer, reported in 110 Iowa 248, on page 250, 81 N.W. 465, 466, this court discussed the question. We said then:

"One may be an habitual drunkard, and yet remain sober for days, and even weeks, at a time. * * * The definition of the term given in State v. Pratt, 34 Vt. 323, is 'one who is in the habit of getting drunk, or who commonly or frequently is drunk.' To the same effect, see Brown v. Brown, 38 Ark. 328; Magahay v. Magahay, 35 Mich. 210; Walton v. Walton, 34 Kan. 195 (8 Pac. Rep. 110); Murphy v. People, 90 Ill. 59; Burns v. Burns, 13 Fla. 376; Mack v. Handy, 39 La. Ann. 497, 2 South. 181; Meathe v. Meathe, 83 Mich. 150 (47 N.W. Rep. 109); 9 Am. & Eng. Enc. Law, 814. See Wheeler v. Wheeler, 53 Iowa 512. In McBee v. McBee, 22 Or. 329 (29 Am. St. Rep. 613, 29 Pac. Rep. 887), the court, after a review of all the authorities, concludes that 'there must be frequent and regular recurrence of excessive indulgence in intoxicating drinks to constitute an habitual drunkard. It is not necessary that he should drink liquors to excess, and become intoxicated every day, or even every week, but there must be such frequent repetition of excessive indulgence as to engender a fixed habit of drunkenness. Occasional acts of intoxication are not sufficient to make one an habitual drunkard. There must be the involuntary tendency to become intoxicated as often as the temptation is presented, which comes from a fixed habit acquired from frequent and excessive indulgence. * * * When a man has reached such a state of demoralization that his inebriety has become habitual, its effect upon his character and conduct is to disqualify him from properly attending to his business, and, if he be married, to render his presence in the marriage relation disgusting and intolerable.'"

This is, we think, an accurate summary of what is meant by habitual drunkenness.

We also said in Bill v. Bill, 178 Iowa 1025, 1029, 157 N.W. 158, 159: "It is not the use of intoxicants, but the abuse thereof which the law condemns." Later, in Lewis v. Lewis, 235 Iowa 693, at 698, 17 N.W.2d 407, we dealt with and approved the meaning of habitual drunkenness and the principles laid down by Judge Ladd in Bizer v. Bizer, supra. They have since been the rule of this court.

When the couple's social drinking with friends began, the plaintiff did not object though she testified: "I went three years without taking a drink after we were married—to the Green Circle three nights a week. I never drank with him at all before we were married." She preferred cokes. This testimony was not denied by anyone. Defendant's drinking began to get worse after 1943 and apparently he spent most of his earnings on liquor. Practically his only occupation during these twelve years was helping his parents on the farm, and for that work he received no more than $40 a month. He secured no friends of his own, but enjoyed associating with plaintiff's friends. The real trouble seems to have started at the Green Circle Inn, where defendant had to be restrained on one occasion from attacking plaintiff because he did not wish to stop drinking and go home. This incident occurred just prior to the time when plaintiff's father moved out of the apartment. From that time on, defendant increased his drinking until in 1944 plaintiff said "he was mighty unruly." He then wanted to drink on *all* the nights he was with the plaintiff. We will not try to relate all the instances of intoxication enumerated in the record, but it will suffice to say that from a social drinker in 1939 or 1940 until about 1943 to 1946 defendant became progressively worse until nearly all their friends declined to associate with them, fearful that defendant would go on another rampage.

The testimony as to his drunkenness is amply corroborated by the Nessens who were next-door neighbors down the hall. The Nessens, whom the trial court believed implicitly, saw him drink to excess on a number of occasions. They observed and heard him on rampages in his apartment and they were

forced to shelter plaintiff from defendant many times. They aided her escape from defendant's wrath and helped her flee to her father's home in Corydon where she would remain over Saturday night on a number of occasions. Mrs. Nessen's observations covered the period from 1943 until they separated. She said: "I noticed an increase in his drinking very much. To the place where he couldn't control himself at all." She also testified that the situation became very bad in 1944 and 1945. Loud noises could be heard day and night when he was there. It was always on week ends. Defendant would keep on drinking until he was just staggering drunk. She said: "I have gone into Marjory Frye's apartment and assisted her in cleaning up things" after defendant had spent a week end in the apartment. Mr. Nessen once took a knife from defendant when he started for the plaintiff after she took a bottle of liquor from him.

Another witness, Ernest Grismore, testified that "he drank to the state where he passed out." We feel the corroboration on this issue was quite sufficient. Lewis v. Lewis, 75 Iowa 200, 39 N.W. 271; Chapman v. Chapman, 181 Iowa 801, 165 N.W. 96; Courtney v. Courtney, 214 Iowa 721, 243 N.W. 510; 17 Am. Jur., Divorce and Separation, section 386, page 338; Levis v. Levis, 243 Iowa 574, 52 N.W.2d 509; Ernest v. Ernest, 243 Iowa 1249, 55 N.W.2d 192; Klepper v. Klepper, 234 Iowa 1138, 15 N.W.2d 213.

Our main disagreement with the trial court is on the basis that defendant should be excused for his intemperance and plaintiff penalized for occasional acquiescence and participation some years before the separation. Such remote acquiescence or participation by plaintiff should not relieve this spoiled and unreliable spouse of his marital duties and responsibilities under our law. It is our opinion that inexcusable habitual drunkenness has been shown and that plaintiff is not barred from but is entitled to relief under the facts shown herein.

Also see Lewis v. Lewis, supra; Converse v. Converse, 225 Iowa 1359, 282 N.W. 368; Matheny v. Matheny, 191 Iowa 337, 182 N.W. 375.

II. It is true we accord much weight, consideration and reliance to and upon the findings and decree of the trial court,

but this court is not bound by those findings and will reverse when firmly convinced that the plaintiff has shown ample grounds for divorce as alleged in her petition. Milks v. Milks, 238 Iowa 785, 791, 28 N.W.2d 472; Weatherill v. Weatherill, 238 Iowa 169, 25 N.W.2d 336. We must do so here.

The trial court found defendant was at fault, but it also found that plaintiff's acts relieved defendant of the usual legal consequences of his drunken indignities toward his spouse. In this latter finding we cannot agree. We cannot accept these reasons for the neglect, contempt and abuse heaped upon plaintiff, and the utter disregard of her many pleas for sobriety. She should not be forced to live under such conditions because she tried to be patient and humor her husband some years before. There is no recrimination in her efforts to escape such treatment.

Even though she purchased a case of liquor during the war period around 1943 and gave some to him when serving her friends, that was not unnatural nor criminal. These acts did not justify either plaintiff or defendant in acquiring habits destructive of the marital relation, nor were they to be reasonably anticipated. They did not excuse defendant's addiction and immoderation.

Having decided that plaintiff is entitled to relief under her showing that defendant was guilty of becoming addicted to habitual drunkenness after marriage, we find it unnecessary to determine the question of whether or not the inhuman treatment alleged endangered plaintiff's life. Being convinced that plaintiff was not at fault and that the good faith of her petition has been established, the plaintiff's prayer for relief should be granted.—Reversed.

BLISS, C. J., and GARFIELD, SMITH, HAYS, OLIVER, and MULRONEY, JJ., concur.

THOMPSON and WENNERSTRUM, JJ., concur specially.

THOMPSON, J. (concurring specially)—I concur in the result of the majority opinion, but I think it only fair to say there is some support in the record for the holding of the trial court. The plaintiff, using personal pulchritude as her criterion, went

man hunting. She bagged an immature boy, already given to some extent to intoxication. It should have been apparent to her that she would, for a time at least, be the chief support of the family.

Plaintiff furnished and paid for a considerable quantity of liquor. She now complains of the use of this by defendant. There is some basis for the trial court's remark that he who furnishes fuel for the fire may not then complain of the heat. On the whole record, however, I think the balance is somewhat in favor of the holding that defendant's use of the liquor went farther than plaintiff intended or—a close point—had reason to apprehend.

WENNERSTRUM, J., joins in this special concurrence.