EMMA B. WILSON, appellant, v. EARNEST WILSON, appellee.

No. 48679.

(Reported in 68 N.W.2d 904)

MARCH 8, 1955.

Haupert & Robertson, of Marshalltown, for appellant.

L. E. McGinnis, of Marshalltown, for appellee.

LARSON, J.—The parties, Emma B. Wilson, age 39, and Earnest Wilson, age 42, were married at Carrolton, Missouri, on August 7, 1936, and lived together in Marshalltown, Iowa, until 1952, when they moved to Beaman, Iowa. Three children were born to this marriage: Thomas, age 16, John, age 14, and James, age 10. The parties met about a year before the marriage in a beer tavern where plaintiff was employed. She has been engaged in the beer business almost constantly since the marriage, as a waitress, as a manager, and finally as the owner of a tavern. The marital relations were fairly satisfactory until sometime in February 1952 when plaintiff purchased the stock of the Royal Tavern in Marshalltown and became the proprietor of the business. Financially it succeeded, but in October 1952 plaintiff sold her stock and purchased a beer tavern in Beaman, Iowa. She moved her furniture to the second-floor apartment over the tavern and, with defendant's help, remodeled and repaired the place into fairly comfortable living quarters for herself and sons. The plan for defendant to remain in the home they had acquired in Marshalltown, where he was employed at the Lennox Furnace Company, did not work out, and he also moved into the apartment at Beaman and commenced commuting the sixteen miles to and from his work at Marshalltown. The homestead was then left unoccupied except for a bed, dresser and a few odds and ends, which defendant uses as a place of lodging when not in Beaman. Defendant has been employed as a laborer, and essentially is thrifty and a hard worker. Since childhood he has acquired a bad habit of using profane and obscene language any time and any place. He also appears to have become addicted to the excessive use of beer, consuming some ten to twenty bottles a day. It was plaintiff's contention that defendant's actions and profane and abusive language toward her and the children constituted inhuman treatment, and that it so affected her as to entitle her to a divorce. She further prayed for an equitable distribution of property, a $75 per month support allowance for the children during minority, and attorney fees. After hearing the evidence and observing the parties, the trial court found she had failed to prove the allegations of her petition and to establish that her life was endangered by defendant's conduct, denied her

petition for divorce, and dismissed the same at her costs. In her appeal plaintiff makes two contentions, viz. (1) that the court erred in its finding that plaintiff failed to prove by a preponderance of the evidence that defendant was guilty of such treatment as to endanger her life, and (2) that the court erred in placing on plaintiff the burden of proving by a preponderance of the credible evidence that she was a dutiful and loving wife and in finding that plaintiff had not met such burden.

I. Divorce cases brought before us generally present a fact question, and this one is no exception. Precedents are of little value in divorce cases because the facts in each are different. Fisher v. Fisher, 243 Iowa 823, 827, 53 N.W.2d 762. We must therefore examine the record for acts which are claimed cruel, and then decide whether or not they amount to inhuman treatment and, if so, whether or not such treatment endangered the life and health of the complainant. It is plaintiff's burden to establish such allegations by a preponderance of the credible evidence. Murray v. Murray, 244 Iowa 548, 550, 57 N.W.2d 234; Record v. Record, 244 Iowa 743, 57 N.W.2d 911, and cases cited therein. Our first inquiry then is as to the treatment complained of, and second, as to the effect on plaintiff. The right to divorce being purely statutory, plaintiff must bring herself under its requirements to obtain relief. Record v. Record, supra, and cases cited therein.

II. We have carefully examined the record and fail to find substantial evidence of physical violence exercised by defendant against the plaintiff. True, there were two or three occasions recited, one of which related to the overamorous conduct of defendant when, as she stated, he did not believe the plaintiff when she told him her physical condition, and another in a scuffle over car keys when defendant grabbed plaintiff by the hair and she fell in a booth in the beer tavern. Another occasion related to a scuffle when plaintiff removed some guns from the car, and defendant chased her to recover them. Only the tavern affair was corroborated, and the latter incident was denied by defendant and his father who was present at the time. We are convinced the credible evidence of physical violence is insufficient to amount

to inhuman treatment under the statute, and it is not seriously contended that, standing alone, it was sufficient.

III. It is true a divorce may be granted for cruel and inhuman treatment endangering life though no physical violence is shown. Murray v. Murray, supra, 244 Iowa 548, 57 N.W.2d 234; Levis v. Levis, 243 Iowa 574, 52 N. W.2d 509; Fisher v. Fisher, supra, 243 Iowa 823, 53 N. W.2d 762, and many others.

It is true profane and abusive language toward the spouse and children may constitute such inhuman treatment as to justify a decree of divorce. Ernest v. Ernest, 243 Iowa 1249, 55 N.W.2d 192; Dillavou v. Dillavou, 235 Iowa 634, 17 N.W.2d 393; Massie v. Massie, 202 Iowa 1311, 210 N.W. 431, and others.

But it is also true that inhuman treatment without resulting danger of life is insufficient grounds for divorce. Walker v. Walker, 239 Iowa 1055, 33 N.W.2d 413; Milks v. Milks, 238 Iowa 785, 28 N.W.2d 472; Weatherill v. Weatherill, 238 Iowa 169, 25 N.W.2d 336. And such treatment without physical violence must be shown to have affected injuriously the health or life of the spouse due to her mental make-up and sensitive nature. Record v. Record, 244 Iowa 743, 57 N.W.2d 911, and cases cited therein; Schnor v. Schnor, 235 Iowa 720, 17 N.W.2d 375, 157 A. L. R. 628; Berry v. Berry, 115 Iowa 543, 88 N.W. 1075. Under such circumstances it is the mental worry caused by various acts and statements, obscene or otherwise, that may be shown to have adversely affected the health of the spouse. But in such instances it is most important to show that effect. It may not be left to inference or presumption, although complainant's testimony as to its effect, together with her physical appearance before the court, may be sufficient corroboration of the injury to her.

Frequent drunkenness and abusive language under certain conditions, depending upon their effect upon the sensitive nature of the spouse, have been held adequate grounds for relief. If such conduct is reasonably shown to so affect the spouse that her health and life are endangered, it is sufficient. It is plaintiff's burden, however, to establish these claims by a preponderance of credible evidence. Massie v. Massie, 202 Iowa 1311, 210 N.W. 431, Fisher v. Fisher, 243 Iowa 823, 53 N.W.2d 762, and Walker v. Walker, 239 Iowa 1055, 33 N.W.2d 413, all supra.

IV. With these rules in mind, let us review the record evidence. It will serve no useful purpose for us to relate the foul and profane language used by the defendant. It was admitted and explained by defendant as a bad habit of many years standing. His mother so testified. He admitted it was wrong, but he contends that the expressions were used in disgust and not in malice. We have no doubt they would under certain circumstances offend and seriously affect the emotional stability of the spouse or children involved. That it did so with these children is clearly shown on one occasion when they drew guns upon defendant and demanded that he cease quarreling with the plaintiff. The language used in public distressed tavern patrons, as well as the children, and they usually left when he engaged in a tirade. On numerous occasions plaintiff would try to quiet him and pay no attention to him. It is true this usually happened when he was drinking in her tavern. However, it appears clear the plaintiff could also use rough language, although she distinguished between swearing generally and directing it at someone and calling them vile names. To justify his disgust, defendant complained that she told and listened to off-color stories around the tavern, and this she did not deny.

There is little or no excuse for such conduct by either, but it is significant the trial court who heard the case and observed the parties was of the opinion that she was not "of a sensitive nature" and that such language did not seriously affect her. We agree. It is hard to conceive of such calloused feelings, but the record seems to bear out this finding. She had lived for years in such environment and boldly related these matters to the court. It is distressing, but not surprising, to learn the children also used profane language. We are not here to be understood as holding defendant's language would not generally constitute inhuman treatment, and perhaps here it was sufficient had plaintiff proven the effect detrimental to her life and health.

V. But this was not all, for plaintiff also complained of defendant's excessive use of beer. Again, the record discloses both had been using intoxicating liquors for many years. They drank together before their marriage, and both used intoxicants

excessively on several subsequent occasions. It was admitted defendant consumed ten or twelve bottles of beer a day and usually spent his evenings at the tavern bar drinking beer. On the other hand plaintiff drank whisky with patrons, and on one occasion explained a kiss from a patron by saying "he was drunk." Habitual drunkenness is made a statutory ground for divorce, Frye v. Frye, 245 Iowa 563, 63 N.W.2d 242, but such was not one of the grounds complained of herein. While habitual drunkenness also may be material evidence of inhuman treatment, it is also true that one who marries another who is a habitual drunkard with knowledge of that fact assumes the risk. Here then while it appears defendant's drinking has increased some, due no doubt to the surroundings and availability of beer, plaintiff prior to 1952 had not found defendant's habit distressing or objectionable.

VI. Defendant had disliked the move to Beaman, though it is true he assented to it and helped finance the venture. He understandably did not like the arrangement of living apart and tried to get plaintiff to sell out and return to Marshalltown with him. This suggestion she considered and had the tavern up for sale for a time. Defendant testified he was somewhat suspicious of a salesman, the man whom he saw kiss his wife, though it is suggested he was unreasonably jealous. We feel he could not be blamed for desiring to live with his wife and family. Over the entire period of their married life, he, in his own way, showed concern and interest in their welfare and happiness. He bought the children a pony and bicycles, improved their home and living quarters, and took them on vacations. He did not like to have them living over and in the tavern. In his way he disclosed affection for them. On the other hand, she also seemed to love the children and to have their love and affection. She was generous with them, took them to shows, bought them things, and gave them money. Obviously it is most difficult for a mother to rear children properly in such surroundings, and she recognized this in expressing a desire to sell out and return to Marshalltown. However, she said she knew no other business and felt the income necessary and desirable. She further stated he insisted that she keep employment to supplement the family income.

It appears both had violated the law, but only defendant

had been convicted. He had pleaded guilty to an OMVI charge when she informed on him. Nevertheless she drove him to and from work while his license was under suspension. Plaintiff therefore has not done all she could to bring about family harmony.

VII. We doubt there is sufficient showing that defendant's treatment of his wife impaired her health and thereby endangered her life. The sole testimony offered, on the physical effect upon plaintiff, she provided as follows: "My husband's conduct has made me a nervous wreck. It has made me lose sleep and I have lost weight. It has made me worry about myself and the children. At present I am under the care of Doctor Blaha in Marshalltown and am taking nerve tablets and medicine to build me up. I am taking the medicine under doctor's orders. I don't feel I can live any longer under the circumstances that I have described."

No direct and little or no circumstantial corroboration of such impairment appears helpful to her. True, we held in Brannen v. Brannen, 237 Iowa 188, 192, 21 N.W.2d 459, 461: "It is not necessary that the corroboration * * * support all parts of plaintiff's testimony" because "strict requirement might often frustrate justice", but such reason would not excuse the material testimony such as that of an attending doctor, who in this case was not called to testify. Then too, other testimony and circumstances do not tend to sustain this necessary allegation. It appears most of her concern was the relationship between defendant and the boys. She testified they said if she dropped the case, as she had one filed previously, they would run away. She said the children had expressed themselves to her as having no affection for their father. Conceivably, this was the immediate cause of the separation.

Living under such conditions as were related by both parties is deplorable, to say the least, but certainly the trial court was right in its conclusion that plaintiff had failed to establish her claim by a preponderance of credible evidence. She has failed to prove that the conditions, bad as they were, were directly injurious to her health and life. From the court's observation of her he did not find her frail or distressed. Both parties are somewhat at fault, and it seems to us if both recognize and mean

to correct their admitted errors, some solution of benefit to this family could be found without divorce. If defendant will make an honest attempt to stop his profane and vile language habit, and curtail his consumption of beer, and if plaintiff will dispose of the beer business and turn her principal interest to the duties as a housekeeper and mother, perhaps they may yet find comfort and happiness together guiding and directing their sons, whom we are sure both love and desire to rear to respectable manhood. Perhaps this is a case for social welfare attention rather than the divorce courts. It occurs to us that all of these parties need some social guidance. There is no way we can force them to live together, but in the hope of their finding a mutual interest in their sons, we feel the trial court's decision should be affirmed.

VIII. Because the trial court had the parties before it and observed their demeanor, we must give to its findings and conclusions much weight and consideration. Littleton v. Littleton, 233 Iowa 1020, 1024, 10 N.W.2d 57; Levis v. Levis, supra, 243 Iowa 574, 578, 52 N.W.2d 509, and cases cited therein; Fisher v. Fisher, supra, 243 Iowa 823, 53 N.W.2d 762. This we have done, and we will not disturb its judgment.—Affirmed.

All JUSTICES concur.