RICHARD G. HAWKINS, appellant, v. ALICE MARIE HAWKINS, appellee.

No. 49543.

(Reported in 93 N.W.2d 584)

DECEMBER 16, 1958.

Don J. Wilson and Walter F. Maley, both of West Des Moines, for appellant.

Clearman, Oehler & Barker, of Iowa City, for appellee.

BLISS, J.—At the time of the trial the plaintiff and defendant were respectively of the ages of 29 and 28 years. They were reared in Henry County and both of them attended Iowa Wesleyan College at Mount Pleasant. He graduated in 1951 and she in 1954. She received her master's degree from the State University of Iowa in June 1957. They were married June 6, 1949, while he was attending school full time, and working at McLeran's Music Store in Mount Pleasant part time. During most of their married life they lived in the town of Olds, where she taught school, and in other towns in the vicinity in the period of 1949 to 1954. From his graduation to the time of the trial he worked full time at McLeran's Music Store, and had yearly earnings of between $4000 and $5000. When they married he had a 1941 Chevrolet car and about $1500 in money and bonds, and she had about $100. At the time of the trial she was employed as a research worker in the State University at Iowa City at a monthly salary of $470, which netted about $375. They agreed early in their marriage that since each was contributing substantial income her earnings would be deposited in a savings account and his would be used to pay the family expenses. In January 1957, when they separated, the savings account balance was $2375, and they had an Olds car valued at $1000 and substantial household furnishings.

Both parties desired children. The first child died shortly after birth. Three or four miscarriages followed. A son, Richard, was born October 21, 1954. The evidence is that defendant, as plaintiff admits, was a good cook and housekeeper and a good mother to "Ricky", as the boy was affectionately called. He was well cared for, well mannered and well dressed, always. There were two life insurance policies of $5000 and $1000 with Ricky as the beneficiary.

There were no serious marital difficulties until the summer of 1956. In the earlier months of that year plaintiff was not home until around ten or eleven o'clock at night, and then he

began staying out until five or six o'clock in the morning four or five nights a week and sometimes he was away every night in the week all night. He and his wife had many arguments as a result. His excuse was that these were business calls, and that he belonged to an investment club and the Junior Chamber of Commerce and that he had sales and service meetings. He contends that he was asked not to come home at all and to get out. She denies this, but admits they had violent arguments, and that she threatened to leave him in the summer and fall of 1956 but did not intend to carry it through. On one occasion she loaded the automobile with some of her personal articles, but he persuaded her to stay.

There was testimony by other witnesses that they saw him driving the car in the country and surrounding towns accompanied by a woman who was not his wife. He admitted having an automobile accident in the country when this woman was in the car.

Witnesses testified that defendant became very nervous and emotionally upset. One of these was the doctor who attended her in her pregnancies and on occasions when he quieted her with sedatives. Plaintiff admitted that he kept company with a divorcee living in the country and that on various occasions he took her home in his car.

Reverend C. C. Swalwell, father of defendant, testified that he was in the home of the parties during the Holiday Season in December 1956, and they discussed their marital problem. Both the plaintiff and the defendant were there. Plaintiff said that he "had to have a divorce", and defendant insisted that they should make a success of their marriage. Plaintiff at this time expressed himself as having no love for his wife. Defendant at this remark was emotionally distraught and burst into tears.

A few days later, on January 2, 1957, plaintiff told defendant he was in serious trouble and needed $500, which she let him have. The next day he told defendant that he had no love for her and was suing for a divorce. His petition was promptly filed.

The only evidence in support of plaintiff's allegation of cruel and inhuman treatment by defendant was that, disregarding him, she spent her evenings in the home studying for her

schoolwork, both as a student in the college and the university, and as a teacher.

The able trial court reviewed the evidence thoroughly in his opinion and decree and our conclusion is that the record fully sustains his findings of fact and conclusions of law. The plaintiff failed to establish the allegations of cruel and inhuman treatment by the defendant endangering his life, and his petition was rightly dismissed.

██ ██ There is no evidence of any cruel and inhuman treatment endangering the life of defendant inflicted by the plaintiff by physical violence such as bodily blows or like mistreatment or abuse, but this court has repeatedly held that cruel and inhuman treatment endangering life may be committed without physical violence. Such wounds as plaintiff inflicted upon defendant are more searing, deeper and dangerous to health and physical and mental well-being of a good, sensitive and trusting wife than blows and bodily injury, and leave scars that time will not efface nor heal. We note but a few of this court's decisions supporting the preceding statement. Cruse v. Cruse, 201 Iowa 810, 208 N.W. 324; Levis v. Levis, 243 Iowa 574, 580, 52 N.W.2d 509; Coulter v. Coulter, 204 Iowa 575, 577, 215 N.W. 619; Brown v. Brown, 248 Iowa 802, 82 N.W.2d 661; Sweat v. Sweat, 238 Iowa 999, 29 N.W.2d 180; Craig v. Craig, 129 Iowa 192–195, 105 N.W. 446, 2 L. R. A., N. S., 669.

Plaintiff is an educated and capable man of affairs with competence, as shown by the record, to readily provide the weekly maintenance of $24 as required by the decree. His rights of visitation to Ricky will enable him to lessen the harm his misconduct has brought upon the boy.

The testimony of the defendant is amply corroborated by other witnesses.

It is our conclusion that the judgment and decree, in all its parts, should be and is—Affirmed.

All JUSTICES concur.